## Case No. 9,783.

### MOORMAN et al. v. HOGE et al.

[2 Sawy. 78; 6 Am. Law Rev. 365; Cox, Manual Trade-Mark Cas. 210; 4 Am. Law T. Rep. U. S. Cts. 217; 14 Int. Rev. Rec. 155; 1 South. Law Rev. 127.] [1]

Circuit Court, D. California. Oct. 21, 1871.

TRADE-MARK—REGISTRY AS EVIDENCE—FORM OF BARREL.

1. The certificate of the registry of a trade-mark, issued to the claimant by the commissioner of patents, under the act of congress of July 8, 1870 [16 Stat. 198], is not conclusive evidence that the device claimed as a trade-mark, is, or can become, a lawful trade-mark, or that the claimant is the first appropriator, and entitled to its exclusive use.

[Cited in L. H. Harris Drug Co. v. Stucky, 46 Fed. 628.]

2. A barrel of peculiar form, dimensions and capacity, irrespective of any marks or brands impressed upon, or connected with it, cannot become a lawful trade-mark, or a substantive part of a lawful trade-mark.

[Approved in Harrington v. Libby, Case No. 6,-107. Cited in Philadelphia Novelty Manuf'g Co. v. Rouss, 40 Fed. 587.]

[Cited in Ball v. Siegel, 116 Ill. 143, 4 N. E. 667; Brill v. Singer Manuf'g Co., 41 Ohio St. 133.]

Bill in equity [by C. P. Moorman and others against Walter Hoge and others, the object of which, is, to obtain a decree restraining an alleged infringement of complainants' trade-mark. From some time prior to 1857, till July 2, 1860, one J. H. Cutter, and complainant, Moorman, were doing business as partners at Louisville, Kentucky, under the name of "J. H. Cutter & Co." The firm was engaged in the manufacture and sale of whisky. Their whisky acquired throughout the country, and particularly in the state of California, a high reputation for excellence, and, was generally known as "Cutter Whisky." The said "J. H. Cutter & Co.," adopted for their California trade, a barrel of peculiar shape and size, in which their whiskies for said market, were put up, shipped and sold. The said barrel was adopted as a trade-mark, in part, to enable dealers in whiskies to more readily distinguish the whiskies of said firm, from those manufactured and sold by other parties. The said barrel is made of staves thirty-eight inches in length, and one and one fourth inches thick. It is twenty inches diameter at the head, has sixteen wooden, and four heavy iron hoops, and is of the capacity of fifty gallons; while ordinary whisky barrels are but thirty-two inches long, with staves of half that thickness, and fewer hoops, and have a capacity of only forty gallons. These barrels, thus used by said "J. H. Cutter & Co.," to contain the whiskies manufactured and sold by them, were branded on the head with the words, "J. H. Cutter, Old Bourbon," and "J. H. Cutter, Pure Old Rye." The words "J. H. Cutter," being in

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 6 Am. Law Rev. 365, and Cox, Manual Trade-Mark Cas. 210, contain only partial reports.]

an arc of a circle, the words "Old," and "Pure," respectively being in a straight line within the arc under the words "J. H. Cutter," and, the words "Bourbon" and "Old Rye," on a straight line directly under the others, below the arc formed by the name. The initials, "J. H. C." were also branded on the barrel near the bung-hole, as a bung mark. In the year 1859, they added an English crown, as a part of the trade mark, which was branded on the head just below the centre, and under the words "J. H. Cutter, Old Bourbon," and "J. H. Cutter, Pure Old Rye." These barrels and marks were used by said J. H. Cutter & Co., in their whisky trade till on, or about, July 2, 1860, when said J. H. Cutter, for a valuable consideration, sold and transferred all his right, title and interest in the business, and to the trade-marks and brands, and the sole right to use, and sell the same, to the complainants in this case; and the said complainants under the firm name of "C. P. Moorman & Co.," have continued to carry on the said business, of manufacturing and selling whiskies at Louisville, Kentucky, and putting them up and selling them in said barrels, branded with said marks, from said date to the present time claiming the said barrel, and said marks as their trade-mark. In the month of November, 1870, the complainants filed, and caused to be recorded, in the United States patent office, at Washington, a verified statement and claim of said trade-mark, having annexed thereto a fac simile of the said barrel, together with the marks aforesaid branded thereon, and under the English crown, the further words in five elliptical lines, "A. P. Hotaling & Co., San Francisco, Sole Agents, for Pacific Coast." And on the other end in three lines forming an ellipse, the words "C. P. Moorman & Co., Manufacturers. Louisville, Ky.;" and, thereupon, the United States commissioner of patents issued to said complainants the certificate provided for in the act of congress relating to the subject. A true copy of the fac simile of said barrel, and of the said marks branded thereon, is annexed to the bill. Upon the issue, as to whether J. H. Cutter was the originator of said barrel, and whether he and his successors, the said complainants, solely used said barrel, and, whether it was generally known in the whisky trade, as the "Cutter Barrel," the testimony is very voluminous, and is in striking conflict. After a careful consideration of the testimony, the court found that J. H. Cutter did originate, and first use this peculiar barrel in the liquor trade; that the barrel was of unusual form and dimensions; that when the pattern was furnished, it was necessary to have staves, and other stock got out expressly for this barrel; that Cutter adopted it for his whiskies, and continuously used it for the California trade, till he transferred his interest in the business, barrel, and brand to complainants; that the complainants have continued

to use it from that time till the present, claiming it as their barrel; that the said barrel has not been used by other parties, except occasionally, when it has been manufactured clandestinely, and used without the knowledge, or when known, against the protest and claim of the complainants, and their assignor; that especially for upwards of ten years last past, the complainants and their assignor, have shipped every year large quantities of whiskies in said barrel to California, and sold them on the Pacific coast under the name of "Cutter Whisky," and that no other person has, during that time, and prior to the acts of defendants complained of, shipped any considerable quantity of whisky in similar barrels; that the said barrel had become very generally known in the trade in San Francisco and on the Pacific coast, as the "Cutter Barrel," so much so, that, if a party familiar with the trade and this barrel, should see such barrel, even at a distance, as across the street, he would expect to find it contain "Cutter Whisky." The defendants are agents at San Francisco, California, for the sale of whiskies on the Pacific coast, for Jesse Moore & Co., a firm engaged in the manufacture and sale of whisky at Louisville, Kentucky. Within the two years next preceding the filing of the bill, said Jesse Moore & Co. shipped to defendants at San Francisco, several hundred barrels of whisky for sale, and the said defendants have sold, and they are now engaged in selling, said whiskies in California, and elsewhere on the Pacific coast. Said whiskies are put up in barrels, which are in all respects as to size, shape, and general appearance, so far as the barrel itself is concerned, a close imitation of the barrel which complainants use for their "Cutter Whisky." The appearance of the two barrels is manifestly alike, and any party looking at the two barrels, without regarding the marks on them, would at once pronounce them the same barrel. The defendants, doubtless, intended the barrels to be alike; for they directed their principals to send their whisky in such barrels, and that they might do so, sent them the measures of the barrel used by the complainants, and called the "Cutter Barrel." But the marks on the barrels are wholly different. The Bourbon whisky barrel of defendants has branded on one head in the centre, and within a circle burnt into the head, and in a circular form, the words, "G. H. Moore, Bourbon;" and within the circle formed by these words, the word "Old," in a straight line with a star above and below it. Over this centre brand are the words "E. Chielovich & Co.," forming the arc of a circle, and under these words, in three straight lines, are the words, "San Francisco, Cal., Sole Agents for the Pacific Coast;" and at the bung, as a bung-mark, the initials "G. H. M." The rye whisky barrel has the words in a similar form and situation, "E. Chielovich & Co., San Francisco, Cal., Sole Agents for the Pacific Coast. J. Moore & Co., Old Rye Whisky;"

and as a bung-mark, the initials "J. M." There is no similarity in the marks and devices branded on the barrels of the respective parties, or in the form in which the words are arranged. There is nothing in these marks or devices aside from the barrel that would lead a purchaser to mistake one for the other. The only similarity between the packages is the barrel itself, independent of the marks upon it, but in this particular the defendants' package is a clear imitation of complainants'. As there is no claim that there is any simulation of the marks or brands on the barrel, it will be unnecessary to more particularly describe them. The defendants sell their whiskies as Jesse Moore & Co.'s whiskies, and make no representation that their whiskies are "Cutter Whisky," other than so far as the fact that they use a similar barrel to that in which "Cutter Whisky" has been so long sold, as to become known as the package which ordinarily contains "Cutter Whisky," can be regarded as such a representation.

Wm. H. Patterson and Alex. Campbell, for complainants.

Hall McAllister and W. H. Rhodes, for defendants.

SAWYER, Circuit Judge. The complainants do not claim that there is any infringement upon that part of what they claim to be their trade-mark, which consists of the words and devices stamped upon the barrel. The claim is that there is an infringement by the use of the barrel only. Is the plaintiff entitled to the exclusive use of a barrel of this peculiar form, construction and capacity, without regard to any mark or device impressed upon, or connected with it? Can a barrel of this description be appropriated as a trade-mark, or substantive part of a trade-mark, so as to exclude the rest of the world from using it in the same branch of business? If so, the complainants, in my judgment, are entitled to the relief sought, otherwise, not.

Complainants invoke the act of congress, of July 8, 1870. entitled, "An act to revise, consolidate and amend the statutes relating to patents and copy-rights." 16 Stat. 198. The seventy-seventh section provides, "That any person or firm domiciled in the United States * * *, and who are entitled to the exclusive use of any lawful trade-mark, or who intend to adopt, and use any trade-mark for exclusive use within the United States, may obtain protection for such lawful trade-mark by complying with the following requirements, to wit:" stating the conditions.

The seventy-eighth section provides that the party or firm, performing the statutory conditions, shall be entitled to use the trade-mark for thirty years, and that "no other person shall lawfully use the same trade-mark, or substantially the same, or so nearly resembling it, as to be calculated to deceive upon substantially the same description of goods."

The seventy-ninth section provides a remedy for violation of the right by imitation, etc., by an action for damages, and injunction. It, also, provides, that, "the commissioner of patents shall not receive and record, any proposed trade-mark which is not, and cannot become, a lawful trade-mark." The eightieth section makes the certificate of the commissioner under seal of the patent office, "evidence in any suit in which such trade-mark shall be brought into controversy."

It is not denied that the complainants have performed all the acts required by the act of congress to secure the protection contemplated, and that the certificate of the commissioner of patents was in form regularly issued. This being so, complainants insist, that the court can only look to the certificate, and the act of congress, to determine the question at issue; that the act of congress confers upon the commissioner jurisdiction to examine and determine whether the proposed trademark is, or, can become a lawful trade-mark; whether it was first used and appropriated by the claimant, or is not identical with a trade-mark appropriated to the same class of goods, and belonging to a different party. or already registered, or, received for registration; and whether it does not so nearly resemble any trade-mark registered or filed for registry, as to be likely to deceive the public; and, that having jurisdiction to determine these matters, his determination is conclusive, and the questions are not open to examination in this court. Rubber Co. v. Goodyear, 9 Wall. [76 U. S.] 796, and Eureka Co. v. Bailey Co., 11 Wall. [78 U. S.] 492, are cited as sustaining the proposition.

I cannot assent to this view. The cases cited only go to the point, that a patent cannot be collaterally attacked on the ground that the extension and re-issue of the patents in question had been procured by fraud. It was held, that, if the patents themselves were to be avoided on the ground of fraud in their issue, the patents being otherwise good, it must be done by a direct proceeding in equity to vacate them. That is an entirely different question from the one now presented. The proceeding before the commissioner to obtain protection for a trade-mark under the act of congress, is purely ex parte. Other parties have no notice, actual or constructive. They have no opportunity to be heard, and their rights cannot be thus conclusively determined in a proceeding to which they are in no sense parties. The certificate of the commissioner of patents, I take it, can have no more conclusive effect as to the rights of third persons, than a patent issued under the patent laws by the same commissioner of patents. The commissioner in such cases is required to investigate the claim to the patent, and to determine whether the subject of the application is patentable; whether the applicant is the inventor; whether it is new, and useful, etc. While the patent is held to be prima

facie evidence, that the machine is new and useful, it is nowhere held to be conclusive on these points, or upon the point whether the machine, or device, or article, is the proper subject of a patent. On the contrary, in every-day practice in the courts in patent cases, the very questions most frequently considered and determined, are. whether the thing patented is patentable; whether it is new, or useful, etc.; and, in the very cases cited to sustain complainants' position, the court determined questions as to the patentability of the articles involved in the patent. If the principle contended for could be maintained, there is not a barrel, or package of any kind in use in mercantile transactions, which could not be appropriated as a trade-mark, no matter how long, or how generally it had been in use, if a party could, in an ex parte application, by any representation, fraud, or other means, once procure it to be registered, and the certificate issued: for this would be conclusive upon all the world, upon the points that it could become a trade-mark, and that the applicant was the first to appropriate and use it, for that purpose.

This point, in my judgment, must be determined against the complainants.

This brings us to the great, and highly important question, whether a barrel of peculiar form and dimensions, without any marks, symbols, or devices of any kind impressed upon, or connected with it, can, in fact and in law, become a trade-mark, or a substantive part of a trade-mark, so as to invest the claimant with an exclusive right to use it. It will be observed that the statute, under which the claim is made, does not define the term, "trade-mark," or say of what it shall consist. The term is used as though its signification was already known in the law. It speaks of it as an already existing thing, and protects it as such. The thing to be protected must be an existing lawful "trade-mark," or something that may then for the first time be adopted as a lawful trade-mark independent of the statute. There must be a lawful trade-mark adopted without reference to the statute, and then, by taking the prescribed steps, that trade-mark so already created and existing, may receive certain further protection under the statute. This is apparent from the language of the seventy-seventh section, which speaks of parties, "who are entitled to the exclusive use of any lawful trade-mark. or who intend to adopt and use any trade-mark for exclusive use." etc., and, by the seventy-ninth section, which forbids the commissioner to receive and record any proposed trade-mark which is not, and cannot become a lawful trade-mark. It does not say what shall constitute a lawful trade-mark. We must, therefore, go to the law of the land, outside this statute, to ascertain what is, or what may become a lawful trade-mark; for the statute leaves the definition of a trade-mark to the law, as it

before stood. The definition of a trade-mark, given by Mr. Upton, is as follows, to wit: "A trade-mark is the name, symbol, figure, letter, form, or device, adopted and used by a manufacturer, or merchant, in order to designate the goods that he manufactures, or sells, and distinguish them from those manufactured or sold by another; to the end that they may be known in the market as his, and thus enable him to secure such profits as result from a reputation for superior skill, industry, or enterprise." Upton, Trade-Marks, p. 9.

This is a good general definition, broad enough in its terms, probably, to cover every case to be found in the books, but it would not alone, perhaps, be sufficient as a test by which every individual claim of a device, as a proper trade-mark, can be tried and determined, without looking into the cases from which the definition is compiled, to see what names, symbols, figures, letters, forms, and devices have been recognized and protected as trade-marks. The words "form," and "device," for instance, are very broad terms, and they might, in a general and comprehensive sense, embrace the form of a barrel, or package, or of the article of merchandise itself sold. But the words of definition are all used in connection with the word. "mark," and the word "mark," in its first and usual signification is defined, by Webster, to be "a visible sign, made or left upon any thing; a line, point, stamp, figure, or the like, drawn or impressed, so as to attract the attention, and carry some information, or intimation; a token; a trace." And some such mark used in connection with, impressed, cut, or stamped upon, or attached to the article manufactured, or sold, in the ordinary course of trade, embraces the usual and ordinary idea of a "trade-mark." The primary and the sole object of the trade-mark, is to distinguish the goods as being a particular manufacture, or as belonging to a particular party. It is cut, stamped, engraved, impressed upon, attached, or in some way appended to the goods, the vessel containing them, or the covering wrapped around the goods for this sole purpose. The object of using a barrel, box, or other package, is to contain, carry, protect, and preserve the goods, or for their convenient handling; and form of some kind and dimensions, are essential in a box, barrel, or package, without which it can have no existence. But the size or shape of the barrel, box, or package can scarcely be considered a mark, nor can that be the sense in which the terms, "form" or "device," are used when employed as a definition of a mark, used for purposes of trade. So general is the idea that the symbol, figure, letter, form, or device, used for a trade-mark, must be a mark, impressed, cut, engraved, stamped, cast upon, or in some way wrapped around, or appended to, the article, or the package, as something independent of the article itself,

or the package used to contain it, that it is carried into the statutes of some states, where it is, doubtless, only intended to adopt the common law definition.

Thus, in the statute of California, the language used is, "any peculiar name, letter, mark, device, figure, or other trade-mark, or name, cut, stamped, cast, or engraved upon, or in any manner attached to, or connected with, any article, or with the covering or wrapping thereof manufactured, or sold," etc. This indicates that it was not supposed that the barrel, package, covering or wrapping itself, which is used for another purpose could properly be used as a trade-mark, but that the trade-mark must be some mark of the kind indicated in some way, impressed, cut, cast upon, or connected with, such package, covering, etc., or the article itself.

The complainants in this case prior to the passage of the act of congress in question, filed their trade-mark in the office of the secretary of state, of California, and, in so doing, they omitted the barrel as a part of their trade-mark. although it had, long before that time been adopted and used by them in their California trade. The reason assigned for this omission by their counsel, on the argument of this cause, in answer to the suggestion that the omission constituted an abandonment of the barrel, was, that, under this statute of California, they could not adopt the barrel as a trade-mark, for that the trade-mark, under the act, must be cut, engraved, stamped, impressed, cast, etc., on the barrel, package, etc., and this, I apprehend, is the true idea of a trade-mark at common law with respect to this point.

I have examined with care a large number of cases involving infringements of trade-marks, including all the recent cases, which I have been able to find, so far as they bear upon the question in hand. It would be an arduous and unprofitable task to comment upon them all, and I shall content myself with stating briefly the result of my examination.

In every case there was a trade-mark proper, such as is indicated in this opinion, embracing some name, symbol, figure, letter, form or device. cut, stamped, cast, impressed or engraved upon, blown into, or, in some manner attached to or connected with the article manufactured or sold, or the package containing it, or the covering or wrapping thereof. Where the vessel containing the article was of glass, iron or other metal, whether of peculiar shape and dimensions or not, the trade-mark proper was often blown, or cast, in the vessel, sometimes on a shoulder, sometimes in the body of the vessel. There were various ways of impressing upon, or connecting with the vessel, package or article, the mark; but there always was a mark in fact, other than the shape or size of the vessel, or package. I find no case

where the vessel, box, package, or whatever contained the article, has been held to constitute a trade-mark by reason of its peculiar form or dimensions, independent of any symbol, figure or device impressed upon, or connected with it for a trade-mark. I find no case where the use of a package of peculiar form and dimensions has been restrained without having imprinted upon, or connected with it, some other symbol, word, letter, or form, adopted as a trade-mark. There are numerous cases where the use of a bottle, or other vessel, or package, having upon it the device adopted as a trade-mark, has been enjoined, but, I find none restraining the use of the bottle, vessel or package without the device impressed upon, or connected with it.

A manuscript copy of a recent decree rendered by the court of chancery at Louisville, Kentucky, in the case of Wilder v. Wilder [unreported], has been furnished me by complainants' counsel, as a case in point. But in that case, the defendants were restrained from selling "any preparation or compound under the name and style of 'J. B. Wilder & Co.'s Stomach Bitters,' printed, stamped, or engraved upon the bottles, labels, wrappers, covers, boxes or packages thereof. Also, from using the bottle herein exhibited marked 'B. 2,' and from imitating or causing to be imitated in any manner, either the bottle or label of the plaintiff herein marked respectively, 'A. and B.'"

This case does not appear to be in any respect inconsistent with the view indicated. Here was a trade-mark proper in connection with the bottle, and, as the court restrained defendants from selling the compound in connection with the trade-mark, "printed, stamped or engraved upon the bottle," doubtless, the complainants' bottles referred to as exhibits in that case, had the trade-mark impressed upon, or blown into the bottles, and this being so, it would be impossible to use those bottles without their having the trade-mark on them, and, therefore, also using the trade-mark itself. The trade-mark, in such cases, constitutes a part of that particular bottle. If this is not the true state of facts, then the copy of the decree furnished me does not show what the exact case is. At all events, it does not appear to be an exception to the general rule before stated. There are numerous cases where the use of a particular bottle or package has been restrained, when the bottle or package had the trade-mark impressed upon or blown into its structure, making it a part of the package itself, and it was necessary to include the particular description of bottle in order to restrain the use of the trade-mark indelibly impressed upon it. But, as before stated, I find no instance where the use of a bottle, vessel or package of a peculiar form and size has been enjoined with the trade-mark of the complainant, or colorable imitation thereof, used upon, or connected with it, omitted.

Doubtless a bottle, vessel, or package of a peculiar form may be used as auxiliary to the trade-mark proper, and may be of use in solving a question of intent of a party, in imitating, or using an evasive simulation of another's trade-mark. As, for instance, a party may adopt a trade-mark, and imprint it upon, or connect it with, the package of peculiar shape containing the article of his manufacture. Another party might make a colorable simulation of the trade-mark so used, but so different as to render it doubtful upon a mere inspection of the simulation of such mark alone, whether it was intended to be an imitation or not, or whether it would be likely to mislead the public. But if the imitator should, in addition to this, use the peculiar shaped package adopted by the party entitled to the trade-mark, and impress upon, or connect with it, the simulation of the trade-mark, all doubt as to the intention and the effect would at once vanish. In this view, a peculiar package might be a valuable auxiliary to the trade-mark, although it could not, of itself alone, constitute a lawful trade-mark, or a substantive part of a lawful trade-mark. But its use would be in aiding to determine the character and effect of a colorable imitation of the trade-mark proper, and the use of the imitation, or the simulated trade-mark, or the use of the package with such simulation connected with it, would be the thing restrained. In this case, there is no pretence that there is any imitation, or colorable simulation, of the marks and brands upon the package, or barrel. The use of the barrel with a simulation of the complainants' trade-mark impressed upon it, would doubtless be restrained. But to extend the privilege of trade-mark to the barrel in question alone, without having impressed upon, or in any way connected with it, any of the other words, symbols, or devices claimed and used by the complainants as a part of their trade-mark, or any colorable imitation of it would, in my judgment, be to go further than any case heretofore decided, and extend the privileges of trade-marks to objects not recognized by any established legal principles applicable to the subject. After a careful examination of the question, my conclusion is, that the barrel in question, without any other marks, or symbols, is not, and that it cannot become, a lawful trade-mark, or a substantive or integral part of a lawful trade-mark, and that complainants have no exclusive right to its use as such. The result is, that complainants' bill must be dismissed with costs, and it is so ordered.