### PHILADELPHIA NOVELTY MANUF'G CO. *v.* ROUSS.

*(Circuit Court, S. D. New York.   December 9, 1889.)*

**TRADE-MARKS—INFRINGEMENTS.**

> Complainant puts up its hair-crimpers in packages, in a red pasteboard box, on the cover of which is a white label with a black border, and in the center the head of a woman, with hair curled, together with the words "Madam Louie, Common-'Sense Hair Crimper."   Defendant dealt in crimpers packed in a similar manner, in red boxes with white labels, and in the center of the label is the head of a female, surrounded by the words, "The Langtry.   Elegantes.   One gross, No. 1, Black, Hair-Crimpers."   Complainant's crimpers were smaller than defendant's, and much heavier, and the wrappers were unlike in length, and in the words printed thereon. Defendant had the prior right to the use of the white label and the central vignette, and the labels were dissimilar in form and general appearance.   There was no evidence that any one was ever misled by any resemblance between the two.   *Held,* that defendant did not infringe complainant's trade-mark.

In Equity.

*Joshua Pusey,* for complainant.

*John J. Jennings*, for defendant.

COXE, J. This is an action for the infringement of a trade-mark. The bill alleges that the complainant is engaged in manufacturing and selling hair-crimpers which are put up in packages of 12, and wrapped with a tan-colored paper, which is held in place by a rubber band. Twelve of these packages are placed in a red pasteboard box, on the cover of which is a white label, with a black border, "and, as a distinctive trade-mark, in the center, the head of a woman, with hair curled, together with the words, 'Madam Louie, Common-Sense Hair-Crimper.'" The defenses are—*First*, that the complainant is not entitled to the exclusive use of the alleged trade-mark; and, *second*, that the defendant does not infringe.

The defendant deals in crimpers manufactured by the Blakesley Novelty Company, which are packed, in a manner similar to the complainant's, in red boxes, with white labels, and are sold by the gross. In the center of the label is the head of a female surrounded by the following words: "The Langtry. Elegantes. One gross, No. 1, Black, Hair-Crimpers." For a more minute and accurate description of the two labels, see *Manufacturing Co.* v. *Novelty Co.*, 37 Fed. Rep. 365. It will be seen that the only marked similarity between the two is found in the fact that both are white, and have the central vignette; but these features the defendant had a perfect right to use,—a better right, in fact, than the complainant. Long before the complainant's predecessors had adopted their design, the predecessor of the defendant's vendor had sold crimpers packed, by the gross, in a pasteboard box, on the cover of which was a white label with a black border; in the center of the label, "the head of a woman with hair curled," and over the head the words, "Hair-Crimpers." Business misfortunes necessitated the discontinuance of this label for two or three years, but, in a legal sense, it was never abandoned. So far as the distinctive trade-mark is concerned, there is, manifestly, no liability. The defendant had an indisputable right to the white label and the central vignette, and in other respects there is no resemblance between his label and the complainant's. They are dissimilar in form, language, type, and general appearance.

The contention is therefore narrowed down to the question whether any right of the complainant is violated because the defendant sells crimpers wrapped in tan-colored paper, and packed in red boxes. It is thought that the affirmative of this proposition cannot be maintained, and especially so in the absence of proof that purchasers have been deceived. There is, of course, a general similarity between all crimpers of this pattern; but no one who thoroughly understood the distinguishing features of the complainant's crimpers, and preferred them to the defendant's, could ever mistake the latter for the former. In addition to the differences of the labels, before adverted to, the complainant's crimpers are smaller than the defendant's, and much heavier,—a box of them weighing over three times as much. The wrappers, too, are unlike. The defendant's wrapper is about two and one-fourth inches in length,

and contains nothing but the printed words of the "Langtry" white label. The complainant's, on the contrary, is nearly four inches in length, and in addition to the words of the "Madam Louie" white label, there appears the complainant's vignette, directions for use, and a caution against "spurious imitations." In short, there are marked differences in everything, except in the color of the boxes and wrappers; and these differences are so pronounced and unmistakable as to overshadow the two points of similarity. The language of Mr. Justice FIELD, in *Tobacco Co.* v. *Finzer*, 128 U. S. 182, 9 Sup. Ct. Rep. 60, seems applicable:

"The judgment of the eye upon the two is more satisfactory than evidence from any other source as to the possibility of parties being misled so as to take one tobacco for the other; and this judgment is against any such possibility. Seeing, in such case, is believing; existing differences being at once perceived, and remaining on the mind of the observer. There is no evidence that any one was ever misled by the alleged resemblance between the two designs."

There is no such evidence here. The proof is overwhelmingly to the effect that a purchaser really preferring the "Madam Louie" crimpers, and desirous of procuring them, could not be deceived by the defendant's crimpers, unless she were afflicted with partial blindness, an arrested mental development, or an unusually heedless disposition. The law cannot take cognizance of conditions so abnormal. In *Adams* v. *Heisel*, 31 Fed. Rep. 279, the court, in dealing with facts quite similar to those in hand, observes:

"The complainants could not obtain a trade-mark for the form of the sticks of chewing gum they might manufacture, nor by the use of a peculiar form and decoration of the boxes they may use to hold the sticks of gum, nor in the manner in which the gum might be placed in the boxes. These qualities and forms are common to the manufacture, and may be made similar without injury to others who may use the same forms. * * * The complainants cannot now so broaden and enlarge their trade-mark as to cover the whole box, with all its ornaments and forms of putting up the gum, and the colors used in such decorations, and thereby prevent others from using these forms of putting up gums for sale."

The trend of the law is strongly towards the proposition that, in ordinary circumstances, the adoption of packages of peculiar form and color alone, unaccompanied by any distinguishing symbol, letter, sign, or seal, is not sufficient to constitute a trade-mark. *Fleischmann* v. *Starkey*, 25 Fed. Rep. 127; *Fairbanks* v. *Jacobus*, 14 Blatchf. 337; *Sewing-Machine Co.* v. *Gibbens Frame*, 17 Fed. Rep. 623; *Moorman* v. *Hoge*, 2 Sawy. 78; *Faber* v. *Faber*, 49 Barb. 358; *Davis* v. *Davis*, 27 Fed. Rep. 490; *Falkinburg* v. *Lucy*, 35 Cal. 52; *Chemical Co.* v. *Stearns*, 37 Fed. Rep. 360; Browne, Trade-Marks, §§ 271, 272. The courts will have time for little else, if they undertake to meddle with and regulate the color and size of the wrapping paper and boxes in which a shop-keeper displays his wares. Trade should not be hampered by vexatious restrictions in matters, apparently, so trivial.

As the distinctive trade-mark of the complainant has not been infringed, and as the public have not been deceived by the defendant's acts, it follows that the bill should be dismissed.