### N. K. FAIRBANK CO. v. R. W. BELL MANUF'G CO.

(Circuit Court, N. D. New York. January 8, 1896.)

Unfair Competition—Color of Wrappers.

Complainant and defendant both sold soap powder in four-pound packages of similar shape, wrapped in paper of a dark yellow color. One panel on each package was occupied by a vignette, with the name of the powder and the name and address of the maker printed in large black letters, and the other panels were occupied by directions for use and commendations of the different powders. The vignette and the names of the powders and of the makers were entirely different. There was evidence of keen competition between the parties, but no evidence that defendant had attempted to palm off its goods as those of complainant. *Held*, that complainant could have no exclusive right to the color of the wrapper of his package, and that no case of unfair competition in trade was made out.

Final hearing in equity, on bill filed to restrain alleged unfair competition in business.

Rowland Cox, for complainant.
Tracy C. Becker, for defendant.

COXE, District Judge. Both parties are selling soap powder in four-pound packages of similar dimensions covered with paper of a dark yellow color. On the principal panel of complainant's package are printed in large letters the words, "Fairbank's Gold Dust Washing Powder." The central vignette represents two children, evidently of African descent and accustomed to the unconventional garb of tropical climates, standing behind a heap of gold coin. From their environment and contented expressions it is but just to infer

that, if not converts to the dogma of monometallism, they are, at least, disposed to take an extremely optimistic view of the future so far as it relates to "Gold Dust Washing Powder." On the back, ends and sides are printed in black letters directions, explanations and statements extolling the excellencies of the complainant's powder. On the front panel of the defendant's package are printed in large letters the words, "Buffalo Soap Powder. R. W. Bell Co., Buffalo, N. Y." The vignette portrays a portly maternal pig applying a sponge, presumably saturated with soap powder, to the ear of a smaller pig holding, inferentially, filial relations to the former. The idea intended to be conveyed seems to be that even pigs can be purified by the vigorous and systematic use of Buffalo soap powder. The directions, et cetera, are found on the back, sides and ends of the package. So far as the lettering is concerned it will be observed that the packages are as dissimilar as possible. No one who can read would confound "Fairbank's Gold Dust" with "Buffalo Soap Powder." It cannot be maintained for an instant that the complainant has a monopoly of the size and shape of the package in which its powder is sold or of the quantity of powder contained therein. The law cannot undertake to dictate to a dealer the number of pounds of a given commodity he shall sell; as well might it attempt to regulate the price. The fact that A. was the first to charge four shillings for an article is no reason why B. should not charge the same sum, and the fact that A. was the first to sell four pounds of soap powder is no reason why B. should not do the same. But it appears that the complainant was not the first to adopt the four-pound package. It was used as long ago as 1876 and it is now the standard package adopted by all dealers in soap powder. The defendant has a right to sell soap powder and to sell it in four-pound packages rectangular in form having on their face the words above quoted.

By a process of exclusion it will be manifest that the only ground of complaint against the defendant is that it covers the packages with a paper dark yellow in color. When reduced to its last analysis this must be the sum and substance of the accusation. At no other point can the complainant fault the defendant. If, for instance, the defendant had chosen pink or white as the color for its packages, leaving them in other respects precisely as they are to-day, it is clear that there would be no cause of action. It is understood that this proposition is not seriously disputed, for the complainant's brief expressly admits that "the defendant should not be enjoined from selling a package of the size, weight and shape of complainant's package, nor should it be restrained from using the designation, 'Buffalo Soap Powder,' nor from making a powder having the appearance of complainant's 'Gold Dust.'" With the product, name, size, weight and shape free, what is there left of which to complain except the color? The sole question then is, has the complainant the exclusive monopoly of yellow paper in connection with four-pound packages of soap powder and is the defendant guilty of fraudulent and unfair competition in selling its product in packages covered by such paper? That the parties are sharp competitors in business is

apparent. That the defendant has attempted to encroach upon the complainant's trade by underselling it in the market cannot be denied. The defendant uniformly represents its powder to be as good as the complainant's powder, or even better, but it has never represented it to be the complainant's powder. There has always been a distinct line of demarkation drawn in the statements to the public. Even in the circular particularly complained of it can hardly be said that it was the defendant's intention to palm off its powder as "Gold Dust" when the most conspicuous words on the paper are "This Beats Gold Dust."

Of course no merchant should be held responsible for all the unauthorized and exaggerated statements of his salesmen made outside the scope of their employment. But conceding all the testimony upon this branch of the case to be competent the impression left upon the mind is that the argument successfully employed by the salesmen was that the defendant's powder being as good as others and considerably cheaper, it was for the advantage of the country merchants to deal in it. There is nothing of which to predicate a finding that the defendant or its agents ever sold a package of powder intending that the purchaser should take it under the impression that he was receiving "Gold Dust." That a small buyer, accustomed to "Gold Dust," but not particular as to the precise brand, might be induced to take any one of several varieties for the powder he came prepared to purchase, cannot be gainsaid. But this would be equally true of almost any commodity. No one taking the slightest pains to inform himself could be deceived. The law cannot undertake to protect idiots or the grossly ignorant, careless or indifferent purchaser. It is made for the great mass of the people who have eyes, ears and common sense. It is enough that they are in no danger of imposition. There is no probability that a buyer of ordinary prudence will be imposed upon by the yellow package when he is told exactly what he is purchasing in large black letters half an inch square. The principles of the highest morality are too often unheeded in the fierce competitions of trade. In their eager race for riches the men of commerce do not hesitate to trample upon prostrate rivals or to resort to practices hardly sanctioned by the loftiest code of ethics. Courts of equity cannot, however, undertake to enforce the precepts of the golden rule except within certain clearly defined boundaries. They can interfere to prevent fraud, they can restrain a trader from selling his goods as those of another, they can enjoin the infringement of trade-marks, symbols and tokens calculated to mislead the public, but they cannot undertake to prescribe the language which dealers shall use in "puffing" their goods, provided it is not false, nor can they prevent them from diverting their rivals' trade by underselling them in the market. The court is treading upon dangerous ground when it attempts to give one trader a monopoly of a package of a particular size or paper of a particular color. These things have heretofore been free. They should remain free. In the case at bar, with the exception of the yellow wrapping paper, there is no point of similarity save such as the defendant had a per-

fect right to use. A decree cannot be given the complainant unless the court is prepared to take the broad ground that the complainant alone has the right to sell soap powder in packages covered with yellow paper. Once enunciated the rule must be applied to all similar cases. The shield of the law must be extended to every dealer who adopts paper of a particular color in which to wrap his goods until at last the court may be called upon to protect one who claims "for his goods the primitive brown paper and tow string as a peculiar property." Harrington v. Libby, 14 Blatchf. 128, Fed. Cas. No. 6,107. The position contended for is in advance of any yet reached by the courts. This court has on three occasions refused to interfere where the question related only to the color of the wrapper in which the goods are displayed. Novelty Co. v. Blakesley, 40 Fed. 588; Novelty Co. v. Rouss, Id. 585; Mumm v. Kirk, Id. 589. The complainant's contention is not, it is thought, in the interest of fair and free competition in trade or capable of a consistent and uniform application. When it comes to a question of such details it is wiser to leave the parties to contend for patronage before the bar of public opinion in the usual manner and with the usual weapons. This may be done with an abiding confidence that he who sells honest goods by honest methods will, in the end, prevail. Commerce is impeded rather than aided by the officious intermeddling of the courts in every petty quarrel between rival traders. It will be an intolerable annoyance if trade is to be still further hampered by a rule which enables a merchant to bring his rival into court because the latter wraps his merchandise in the same colored paper as the former. The bill is dismissed.