## SEYBOLD BAKING COMPANY *v.* DERST BAKING COMPANY.

No. 14548. · JULY 8, 1943.

*Lawton & Cunningham* and *Hester & Clark,* for plaintiff in error.

*Kennedy, McWhorter & Jenkins* and *Shelby Myrick,* contra.

JENKINS, Justice. The rule seems to be well recognized that, in order to transgress an unfair competition act, the mere' use of the same color on wrappers, containers, or labels will not suffice. Joseph Schlitz Brewing Co. *v.* Houston Ice & Brewing Co., 241 Fed. 817, 821, 250 U. S. 28 (39 Sup. Ct. 401, 63 L. ed. 822); Southern Cal. Fish Co. *v.* White Star Canning Co., 45 Cal. App. 426 (187 Pac. 981).; Union Fishermen's Co-Op. Pkg. Co. *v.* Point Adams Pkg. Co., 108 Or. 535 (217 Pac. 642); John Vittucci Co. *v.* Merline, 130 Wash. 483 (228 Pac. 292); Turner & Seymour .Mfg. Co. *v.* A. & J. Mfg. Co., 20 Fed. 2d, 298; Omega Oil Co. *v.*

Weschler, 35 Misc. 441 (71 N. Y. Supp. 983, Id. 68 App. Div. 638, 74 N. Y. Supp. 1140); Heinz v. Lutz, 146 Pa. 592 (23 Atl. 314); Nims on Unfair Competition (2d ed.), 238, 292, 594 (§§ 119, 140, 332); Hopkins on Trademarks &c. (3d ed.), 280 (§ 114). To hold that after one person adopts some color for the wrapper, container, or label of his merchandise, no competitor can go into the open market and buy and use a wrapper of the same color for a similar purpose would violate the rules against monopoly and restraints of trade. Once enunciated, there could scarcely be set a limit to such a doctrine, and its application would inevitably lead to oppressive lengths. As was said in N. K. Fairbanks Co. v. R. W. Bell Mfg. Co., 71 Fed. 295, 298, if such a rule be applied, "the shield of the law must be extended to every dealer who adopts paper of a particular color in which to wrap his goods, until at last the court may be called upon to protect one who claims 'for his goods the primitive brown paper and tow string as a peculiar property.'" To the same effect, see Philadelphia Novelty Mfg. Co. v. Rouss, 40 Fed. 585, 587; 63 C. J. 456, 358 (§§ 129 (12), 56 (8)), and cit.

The contention of the plaintiff is not supported by two Federal decisions chiefly relied upon: Andrew Jergens Co. v. Bonded Produts Corp., 13 Fed. 2d, 417, 424, and Caron Cor. v. Vivaudou, 4 Fed. 2d, 995, 997. In the former decision it was merely said: "There is no exclusive right in the mere color of wrappers. The wrong, if any, exists when a fraud on the public is caused by the use of similar colors, *as an element,* in the real deceit forbidden." (Italics ours.) In that case the wrong consisted, not only in "the alleged imitation of the plaintiff's wrappers" in color and contents, but chiefly in the alleged use of the name "Woodbury" upon [the] toilet soap, so that color, at most, was only one of several elements that together violated the plaintiff's rights. In the Vivaudou decision the court, in "observing that it must be a clear case in which mere similarity in color will be enough," did not have before it such a case; and therefore the statement was obiter. The case actually involved, not only the same shade, black, on the "make-up" of the boxes and bottles, but an alleged misuse of the words "Black Narcissus." The court denied an injunction; and therefore the statement as to "mere similarity of color" was not only obiter, but contrary to the actual holding. In that case the court

said: "While the plaintiff has no right to a monopoly in the use of the word, the color, or the ornament, simpliciter, when it becomes an element in a manifold likely to divert from him his customers, the law will prevent its use. . . Color may be an effective means of fraud . . though the cases, so far as we know, have always turned upon color as an element in a dress otherwise shown to be fraudulent."

Even though it should be assumed, as contended by the plaintiff, that the holding in A. G. Morse Co. v. Walter M. Lowney Co., 256 Fed. 935, 941, as applied to color alone, that "intent is immaterial so long as the one inspired by it remains within the law," is unsound, and that mere color, when so intended, may constitute the basis of an actual, illegal fraudulent intent, we do not think, even then, that the testimony of the defendant's manager can be taken to evidence an intent on his part to deceive the public and thereby defraud the plaintiff. As this contention was ably and strongly urged both on the oral argument and in the plaintiff's brief, we quote all the relevant portion of this testimony bearing on such contention:

"Seybold Baking Company [the defendant] . . has fourteen plants. . . [It] operates in Florida, Georgia, North and South Carolina, and Virginia. . . Before we adopted this tango colored cellophane wrapper for sale in Savannah, we used this white waxed paper; and we began to use this cellophane wrapper along in the fall. . . We changed from this white wrapper to the cellophane because we felt that the wrapper was better suited for the dark loaf; we were putting it on at Savannah and thought we would try it out. We are in competition with Derst [the plaintiff], Bart, and Nugent. Seybold sells to the entire State of Florida, as far west as Tallahassee; Moultrie, Albany, Waycross, Savannah, and territory in between. We use this tango colored wrapper throughout South Georgia and Florida. We have used it in Waycross, Tifton, Valdosta; we are not using it now; I don't remember the date we stopped, but it was before the injunction; we did not have a supply sufficient to use it; and we could not get the promise of the manufacturers. We used it in the Miami plant and in Tampa; it is used by other bakers in competition with us, not in Miami. Dupont and Sylvania Corporation sell this cellophane wrapper to anybody who will purchase it, I think. I never had

them refuse an order. I never heard of anyone having the exclusive right to purchase this cellophane from either of these companies; you can buy it; it is sold to the trade generally. ˙ I would say this cellophane wrapper is used for other articles of merchandise, for candy, peanuts, and things like that. . . Nobody in . Jacksonville uses the cellophane covering because different markets use different wrappers. Cellophane is more than twice as expensive as this white paper. If anybody in Jacksonville should put on this cellophane tango wrapper, I sure would be interested in putting it on too. We used it in Brunswick and surrounding territory. That is the district where Mr. Derst does business, and we do not use it in any other place because we don't have competition with cellophane; we put on cellophane to compete with the cellophane wrapper. We use tango colored cellophane in Tampa and Miami. It is used in Virginia too. We use cellophane on a white type of loaf and wax paper on another type of white loaf. We come in competition with Bart and Nugent by using white cellophane wrapper; and they compete with us. . . I testified that the reason we did not use it in other places was that we did not have competition with the tango colored˙ wrapper. When we put on this tango colored wrapper, we knew Mr. Derst was on this market with a tango colored wrapper on his wheat bread, and we put that same colored wrapper on our 100 per cent. wheat. . . We use this wrapper where we have competition; and we consider Derst a competitor. We use it in Brunswick, Savannah, and also in Carolina. . ˌ. All of this bread is packed in Jacksonville and brought into this market. It is wrapped in tango cellophane because I considered it was better suited for this bread. We have been marketing this bread in this wax paper before."

The effect of this testimony goes no further than to show that the "tango," or yellowish brown, cellophane was used primarily to compete with the plaintiff in the Savannah territory by putting the bread in a wrapper of the best and most attractive kind and of the most appropriate color for ˙the particular product. This testimony, however, failed to show any purpose or intent to *confuse* the public into buying its bread instead of the plaintiff's; especially in view of other evidence that at the time complained of the defendant sought to identify its bread, not only by a plainly-printed label observable through the cellophane, but by large conspicuous

red colored stickers on each end outside the loaf. Although it appears that government economic regulations may now prevent the use of these outside stickers, their use at the time complained of is material on the question of intent. The defendant's bread was also labeled with the plain and conspicuously printed trade-name of "Southern" inside the transparent wrapper, while the plaintiff's bread was just as plainly labeled under the trade-name, "Holsum." Since the plaintiff can not be sustained in any effort ⸱to monopolize the use of transparent brown cellophane for brown bread wrappers, to the extent that no one else can buy such wrappers on the open market for such a use and purpose, and there are no other factors indicative of a fraudulent purpose to deceive the public and defraud the plaintiff, the grant of the injunction must be                    *Reversed. All the Justices concur.*