Joe L. THOMPSON and Thomas McInnis,
Appellants,

v.

ALPINE MOTOR LODGE, INC.,
Appellee.

No. 18708.

United States Court of Appeals
Fifth Circuit.

Dec. 7, 1961.

O. L. Crumbley, Macon, Ga., for appellants.

J. C. McDonald, Fitzgerald, Ga., Murphey Rogers, Ocilla, Ga., Ben B. Mills, Jr., J. W. McDonald, Fitzgerald, Ga., for appellee.

Before CAMERON, BROWN, and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

Joe L. Thompson and Thomas McInnis own and operate the "Alpine Lodge" motel on U. S. Highway 41 in Macon, Georgia. A hundred miles away, at Tifton, Georgia, on the same well-traveled highway, the defendant corporation owns and operates the "Alpine Motor Lodge" motel. Both are on the proposed interstate highway system. In this action the plaintiffs ask for an injunction against the defendant's use of the trade name "Alpine Motor Lodge"; they do not ask for damages. At the conclusion of the plaintiffs' evidence, on motion of the defendant for an involuntary dismissal under Rule 41, F.R.Civ.P., 28 U.S.C.A., the district judge dismissed the case on the ground that the plaintiffs had failed to prove that the defendant acted with intent to infringe on the plaintiffs' trade name. The plaintiffs appeal from the order of dismissal. We reverse and remand the case.

The plaintiffs began construction of their motel in Macon in October 1957. From the time they entered into their first construction contract, they called their motel the "Alpine Lodge." It

opened for business June 2, 1958. July 10 the plaintiffs registered the trade name "Alpine Lodge" with the Clerk of the Superior Court of Bibb County, Georgia. The previous day, apparently in ignorance of the existence of plaintiffs' motel, the defendant had filed with the Georgia Secretary of State an application to do business under the corporate name, "Alpine Motor Lodge, Inc.". This application was approved and a charter granted to the corporation June 11. The defendant opened its motel at Tifton July 29, 1959. The plaintiffs assert that the similarity between the names of the two motels confuses the public and constitutes an encroachment on their rights in the exclusive [1] use of the trade name "Alpine Lodge".

In their petition for injunctive relief the plaintiffs alleged: "Prior to the time this defendant opened its motel to the public, it had knowledge of the existence of the 'Alpine Lodge', your petitioner's motel, in Macon, Georgia, and knew of the excellent reputation it had developed through the excellence of its accommodations and services rendered to his guests and further knew that your petitioner had acquired a prior right to the exclusive use of said trade name, 'Alpine Lodge'. Notwithstanding this knowledge, defendant used a similar trade name with the intention of deceiving and misleading the public so as to encroach upon the business of your petitioner, and to put off his services as those of your petitioners." During the argument on the defendant's motion for dismissal, the trial judge asked the plaintiffs' counsel whether they had proved that allegation. The attorney answered that they had not proved the allegation, but insisted that it was not necessary to entitle the plaintiffs to an injunction. The trial judge stated that since the statute gov-

erning injunctions against trade name infringement makes intent a necessary element the failure to prove the allegation of intent was fatal to the plaintiffs' cause.

Section 37–712 of the Georgia Code provides that "Any attempt to encroach upon the business of a trader, or other person, by the use of similar trade-marks, names, or devices, with the intention of deceiving and misleading the public, is a fraud for which equity will grant relief." This appeal rests squarely on the significance of the phrase "with the intention of deceiving and misleading the public."

Innumerable cases have arisen under this provision, and many have discussed the requirement of intent. The chestnut case is Larabee & Co. v. Lewis, 1881, 67 Ga. 561, 564–65, where the Georgia Supreme Court affirmed a lower court ruling sustaining a demurrer, holding:

"The second ground of the demurrer was that there was no allegation in the bill that the defendant had used the word snowflake 'with the intent to deceive or mislead the public.'

"Without reference to what may have been ruled in other states on this subject, our statute makes the intention to deceive and mislead the public by the use of similar trade marks, names or devices to encroach upon the business of another, a fraud for which equity will grant relief.

"When one comes, therefore, asking the relief provided, he should come according to the rule prescribed. It is insisted, however, that the complainants could not look into the mind of the defendant and discover his intent. If this were necessary, intention could never be proved. Words, acts and conduct prove intent, and are the usual and

1. We use the term "exclusive" rights to the use of a trade name, following the practice of the Georgia courts. It should be noted, however, that although the rights in a trade name are exclusive within certain geographical limits, Section 37-712 does not create rights good against anyone, anywhere. The outer limits are set by the requirement that the plaintiff must show a similarity that is confusing to the public, since, as an extreme example, the use of the name "Alpine Lodge" would not be confusing if the other lodge were in the Rocky Mountains or the Adirondacks.

ordinary means adopted by courts of justice to establish it, and we see no more difficulty in this than in other cases."

The decision recognizes that intent is a statutory element and that under the strict rules of pleading then prevailing the failure to allege intent was fatal. But it holds out a line of rescue from the imbroglio of proving subjective intent by its statement that "[w]ords, acts and conduct prove intent". Later cases catch this line.

■ A review of the cases shows that although the Georgia courts state that intent must be found to warrant an injunction, when it comes to finding intent they look to the effect of a defendant's "words, acts and conduct" and ask the objective questions of whether the plaintiff held an exclusive right to the trade mark or name and whether the defendant encroached upon it. Womble v. Parker, 1951, 208 Ga. 378, 67 S.E.2d 133; Gano v. Gano, 1948, 203 Ga. 637, 47 S.E.2d 741; Seybold Baking Co. v. Derst Baking Co., 1943, 196 Ga. 391, 26 S.E.2d 536. See Kay Jewelry Company v. Kapiloff, 1948, 204 Ga. 210, 49 S.E.2d 19. The implicit rationale is the ancient doctrine that a man intends the natural and probable consequences of his acts. When he knows of a trade name used by another person and, notwithstanding this knowledge, uses a similar name in his own business operations, the courts will presume that he has encroached upon the name of the other intentionally and fraudulently. Illustrative of this approach is the leading case, Atlanta Paper Co. v. Jacksonville Paper Co., 1937, 184 Ga. 205, 212, 213, 190 S.E. 777, 782–83. The Georgia Supreme Court declared that since "in this state our statute must govern" intent is required, as had been held in Larabee. Immediately, however, it went on to state:

"It is also necessary to remember in dealing with this case that the general purpose of the law controlling trade-names and unfair competition is the prevention of fraud-ulent interference with rights of the lawful holder of a trade-name and protection of the public from imposition. Relief against unfair competition by the use of trade-names really rests on the deceit or fraud which the later comer into the field is practicing upon the earlier comer and on the public. * * * In fact, it may be stated broadly that any conduct, the nature and probable tendency and effect of which is to deceive the public so as to pass off the goods or business of one person as and for the goods or business of another, constitutes actionable unfair competition. * * The basic principle of the law of unfair competition is that no one has a right to dress up his goods or business or otherwise represent the same in such manner as to deceive an intending purchaser and induce him to believe he is buying the goods of another, and that no one has a right to avail himself of another's favorable reputation in order to sell his own goods. The present tendency is to decide every case on the ground of unfair competition, by making the decision turn on whether or not the effect of what was done is to pass off the goods or business of one man as the goods or business of another."

This reliance on the objective facts of the defendant's encroachment on the plaintiff's rights is explicitly shown in Saunders System Atlantic Co. v. Drive It Yourself Co., 1924, 158 Ga. 1, 6, 123 S.E. 132, 135. There the court had this to say:

"An infringement upon the real or trade-name of an individual or corporation is such a colorable imitation of the name that the general public, in the exercise of ordinary care, might think that it is the name of the individual or corporation first appropriating the same. The use of such name or the infringement thereof is a fraud against the person entitled to use the same, when the infringer intends to create the

impression in the minds of the public that he and the person or corporation first appropriating the name are the same. *If the person or corporation first appropriating and using the name has a clear right to the use thereof, its subsequent use by another person or corporation, knowing of this right, is presumed by the law to be fraudulent.* It has even been held that the innocent or accidental use of a trade-name capable of exclusive appropriation will be enjoined." (Emphasis added.)

■ Summarizing, the Georgia decisions have consistently treated constructive fraud as equivalent to the fraudulent intent required by the statute. In place of an affirmative showing of specific intent, Georgia courts will apply Section 37–712 when it is shown that: (1) the defendant was put on notice or had knowledge of the plaintiff's trade name and (2) the similarity in names is likely to confuse or mislead the public. This is the prevailing view in most jurisdictions. 3 Callman, the Law of Unfair Competition and Trademarks § 86.1(a), p. 1721. See, for example, Queen Mfg. Co. v. Isaac Ginsberg & Bros., 8 Cir., 1928, 25 F.2d 284, 288; Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 6 Cir., 1941, 119 F.2d 316, 323; American Home Benefit Ass'n v. United American Benefit Ass'n, 1942, 63 Idaho 745, 125 P.2d 1010, 1014–15. See 52 Am.Jur., Trademarks, Tradenames, Etc. § 88 (1944).

In a suit for an injunction—assuming a misleading similarity in names—the statutory intent is always present, at least from the moment a defendant is notified of the complaint. It may well be that the defendant's use of the name "Alpine Motor Lodge" at first was not unlawful, because of lack of actual knowledge of the plaintiffs' motel, but in the future encroachment will be unlawful since the litigation has now authoritatively put the defendant on notice.

Two important questions must be determined on the retrial of this case: (1) Do the plaintiffs have the exclusive right to the name "Alpine Motor Lodge"? (2) Is the defendant's use in Tifton of the name "Alpine Motor Lodge" so confusing as to encroach on the plaintiff's rights in the name "Alpine Lodge" in Macon? The decision is reversed, and the case remanded for determination of these questions and for proceedings not inconsistent with this opinion.