FRED W. JONES, Jr., Judge.
Defendants, W. Max Crow and Sue Crow, appealed the judgment of the trial court in favor of plaintiff, Ronnie Cooper, d/b/a Cooper Awning & Screen Company, in plaintiff’s action for damages as the result of breach of contract. Finding that the trial court did not err in holding that the transaction was not a door-to-door sale under 16 C.F.R. 429.1, we affirm.

Issues Presented,

On appeal, defendants assert the trial court erred in:
1) Failing to find the sale was not solicited in defendants’ home after finding the price and terms of the contract were negotiated in the home;
2) Finding defendants were not entitled to the three day “cooling off” period for door-to-door sales as set forth in 16 C.F.R. 429.1; and,
3) Failing to rescind the sale due to lack of notice and after timely rescission as provided by 16 C.F.R. 429.1.

Factual Context

The record establishes that in early August, a co-worker of Sue Crow, James McDonner, contacted plaintiff on her behalf to discuss the possible installation of a patio awning. Sue Crow and plaintiff spoke directly after the initial contact and made arrangements to meet at her business the next morning. At that meeting, plaintiff gave defendant some preliminary figures as to the estimated costs but plaintiff stated that before a final price estimate could be given, he would have to see defendant’s home. Plaintiff went to the home on August 7, 1987 and met with both defendants. At that time, the parties executed a contract to install an aluminum patio cover. The total price set forth in the contract was $1480, which included a down payment of $380 made by defendants. On August 12, 1987 defendant informed plaintiff she would not honor the contract and that payment on the check tendered for the down payment had been stopped.
On September 8, 1987 plaintiff instituted this action for damages as the result of breach of contract, naming Max and Sue Crow as defendants. Plaintiff alleged that out of the total contract price of $1480, $814 was for the acquisition and preparation of materials, which part of the contract plaintiff had performed before receiving notification the contract would not be honored. After having been specially acquired and cut for the custom job on defendants’ residence, the materials had a salvage value of only $60. Therefore, plaintiff was *440 entitled to recover the difference of $754. Plaintiff asserted he was also entitled to recover the amount of $426 which represented profit on the contract. Plaintiff further asserted the contract provided for reasonable attorney’s fees and thus he was entitled to attorney’s fees in the amount of $400 incurred in enforcing the contract.
In their answer, defendants asserted that the contract was confected at their domicile and that this sale was a door-to-door sale as contemplated by the regulations of the Federal Trade Commission. Defendants alleged that the contract and receipt which were furnished to them failed to notify them of the fact they could cancel the transaction at any time prior to midnight of the third business day after the date of the transaction and that plaintiff failed to hon- or a valid notice of cancellation given to him within ten days of the transaction. Defendants contended these actions on the part of plaintiff constituted unfair and deceptive practices, thus affording them the right to cancel the sales transaction and rendering the contract sued upon illegal and completely null. Defendants further alleged the transaction was a home solicitation sale within the meaning of the Louisiana Consumer Credit Law and the failure of plaintiff to notify defendants of their right to cancel the transaction within three days constituted an unfair and deceptive trade practice, rendering the contract sued upon null and void. Defendants also asserted the transaction was a consumer credit transaction within the purview of 15 U.S.C.A. § 1635, entitling them to rescind the transaction until midnight of the third business day following consummation of the transaction or delivery of the information and rescission forms required under that section, together with a statement containing the disclosures required, whichever was later. As defendants were never furnished with the notice of the right of rescission or the forms necessary to rescind the transaction, but notified plaintiff of their intent to rescind the contact, this transaction was completely null and void.
At the trial on the merits, plaintiff testified he had been in business for 21 years and in August 1987 received a call from McDonner to inquire about work for Sue Crow. Mrs. Crow telephoned plaintiff shortly thereafter. The parties made arrangements to meet at her place of business the following morning to discuss installation of the aluminum patio cover. Plaintiff could not give a definite price without seeing the home. Mrs. Crow later telephoned plaintiff to make an appointment. Cooper stated he had never solicited customers, but relied on advertising and personal referrals. After meeting with the Crows at their home, the contract was executed. Prior to being contacted by defendant as to the cancellation, Cooper had cut the posts and “I” beam for the patio as well as special ordering the other materials necessary to complete the job. Cooper did have some of the required material already in stock. Cooper stated there had been no extension of credit since he routinely did a “cash only” business. He said that the aluminum cover cost approximately $479 and he had also incurred charges of $140 for a truck and labor, $105 for the “I” beam and $90 for the posts. By adding all the various charges and deducting $240, which was plaintiff’s cost in installing the cover, plaintiff requested damages of $1240. Plaintiff’s testimony was corroborated by the testimony of his wife, Elizabeth Cooper, who acted as secretary of the business.
Defendant, Sue Crow, testified she never telephoned plaintiff to initiate the sale. Rather, during the initial telephone call with McDonner, plaintiff insisted on speaking to Crow and stated he could not give her a price over the telephone. So, she reluctantly made an appointment to discuss the matter with him. At the meeting, Cooper stated he could not give her a final price without examining her home. Defendant said that after meeting in her home, she and her husband signed a contract but were not given any notice of rights, such as the right to rescind the sale, by plaintiff.
After examining the evidence and testimony, the trial court found in favor of plaintiff, awarding him damages for breach of contract. The court noted that while there was some dispute over who initiated *441 the contact, it concluded the contact was initiated by defendant, Sue Crow. Observing that defendants contended they were entitled to cancel the contract under state and federal consumer protection statutes, the court held that the facts of the case did not come within the ambit of any of those statutes. The Federal Consumer Credit Protection Act, 15 U.S.C.A. § 1635, provided the right of rescission in the case of any consumer credit transaction. The court held this contract did not provide for credit, the debt was not deferred and plaintiff was not a creditor as defined by the statute as he did not regularly extend credit. Thus, defendants had no right to rescind the contract under this particular statute.
With reference to 16 C.F.R. 429.1, which provided a right of rescission in connection with “door-to-door sales”, the court noted that “door-to-door sale” was defined as a sale in which the seller personally solicited the sale, including those in response to or following an invitation by the buyer, and the buyer’s signed agreement or offer to purchase was made at a place other than the place of business of the seller. The court held this case did not fall within the provisions of this regulation since this was not a sale wherein the buyer simply invited the seller to come by and make his “pitch”. Rather, she had contacted the seller and informed him of her intent to purchase specific goods and services with discussion of the terms and prices. Plaintiffs visit to the defendants’ home was simply to inspect the premises so he could calculate exactly what materials would be needed and could set a firm price for the contract. Plaintiff could not be said to have solicited this contract even in response to a “invitation to solicit” by defendants.
In examining the state consumer protection law, the court found the facts once again did not fit within the purview of the statute allowing a consumer to cancel a home solicitation sale. La.R.S. 9:3538 specifically excluded a sale which had been initiated by the consumer by communication, whether by telephone or in person, with the seller at his business establishment. Thus, the court concluded defendants were not entitled to rescind the contract under these statutes nor was there evidence of any action by plaintiff that would justify such an action. Rather, the evidence showed that defendant simply found another awning company whose product they preferred and chose to dishon- or their contract with plaintiff.
In estimating the damages which plaintiff sustained as a result of the breach of contract, the court noted that the evidence indicated the patio cover was a standard size and that all of the items were probably already in stock. Even if they were not, they could be easily sold to another customer without any loss. The court found plaintiff did meet his burden of proof that the $105 “I” beam could not be reused and thus plaintiff was entitled to recover that amount. Further, plaintiff had proven he was entitled to $426 in profit and $140 in labor and truck charges, for total damages of $671. The court awarded attorney’s fees of $350.

Right of Rescission

In brief, defendants concede that 15 U.S. C.A. § 1635 and La.R.S. 9:3538 are inapplicable but argue the transaction clearly falls under the ambit of 16 C.F.R. 429.1, providing a “cooling off” period for door-to-door sales. Defendants contend that regardless of the initial contact or invitation by them to plaintiff, the sale was solicited in their home, thus entitling them to the right of rescission within three days. Defendants assert that even if their rescission is not considered as timely, the three day right of rescission did not begin to run until notice of the right to rescind was received by them. As defendants received no notice of their rights, they are still entitled to the right to rescind the transaction.
Congress created the Federal Trade Commission in 1914 and delegated to it the power to determine and prevent “unfair methods of competition” and commerce. American Financial Services v. F.T.C., 767 F.2d 957 (D.C.Cir.1985), U.S. cert. denied, 475 U.S. 1011, 106 S.Ct. 1185, 89 L.Ed.2d 301 (1986); 15 U.S.C.A. § 41 et seq.
*442 In connection with this duty to protect consumers from unfair and deceptive trade practices, the F.T.C. enacted 16 C.F.R. 469.-1, dealing with a “cooling off” period for door-to-door sales. In pertinent part the statute provides that in connection with any door-to-door sale, it constitutes an unfair and deceptive act or practice for any seller to:
(a)Fail to furnish the buyer with a fully completed receipt or copy of any contract pertaining to such sale at the time of its execution, which is in the same language ... as that principally used in the oral sales presentation and which shows the date of the transaction and contains the name and address of the seller, and in immediate proximity to the space reserved in the contract for the signature of the buyer or on the front page of the receipt if a contract is not used and in bold face type of a minimum size of 10 points, a statement in substantially the following form:
“You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction ...”
The seller may select the method of providing the buyer with the duplicate notice of cancellation form ... provided however, that in the event of a cancellation the buyer must be able to retain a complete copy of the contract or receipt ...
(b) Fail to furnish each buyer, at the time the buyer signs the door-to-door sales contract or otherwise agrees to buy consumer goods or services from the seller, a completed form in duplicate, captioned either “NOTICE OF RIGHT TO • CANCEL” or “NOTICE OF CANCELLATION,” which shall (where applicable) contain in ten point bold face type the following information and statements in the same language ... as that used in the contract ...
(c) Fail, before furnishing copies of the “Notice of Cancellation” to the buyer, to complete both copies by entering the name of the seller, the address of the seller's place of business, the date of the transaction, and the date, not earlier than the third business day following the date of the transaction, by which the buyer may give notice of cancellation.
(d) Include in any door-to-door contract or receipt any confession of judgment or any waiver of any of the rights to which the buyer is entitled under this section including specifically his right to cancel the sale in accordance with the provisions of this section.
(e) Fail to inform each buyer orally, at the time he signs the contract or purchases the goods or services, of his right to cancel.
(f) Misrepresent in any manner the buyer’s right to cancel.
(g) Fail or refuse to honor any valid notice of cancellation by a buyer and within 10 business days after the receipt of such notice, to: (i) Refund all payments made under the contract or sale; (ii) return any goods or property traded in, in substantially as good condition as when received by the seller; (iii) cancel and return any negotiable instrument executed by the buyer in connection with the contract or sale and take any action necessary or appropriate to terminate promptly any security interest created in the transaction.
(h) Negotiate, transfer, sell, or assign any note or other evidence of indebtedness to a finance company or other third party prior to midnight of the fifth business day following the day the contract was signed or the goods or services were purchased.
(i) Fail, within 10 business days of receipt of the buyer’s notice of cancellation, to notify him whether the seller intends to repossess or to abandon any shipped or delivered goods.
The regulation sets forth the following definition for door-to-door sales:
(a) DOOR-TO-DOOR SALE — A sale, lease, or rental of consumer goods or services with a purchase price of $25 or more, whether under single or multiple contracts, in which the seller or his representative personally solicits the sale, including those in response to or following *443 an invitation by the buyer, and the buyer’s agreement or offer to purchase is made at a place other than the place of business of the seller ...
Seller is defined by the regulation as follows:
(c) SELLER — Any person, partnership, corporation, or association engaged in the door-to-door sale of consumer goods or services.
The sole issue before this court is whether the transaction between these parties constituted a door-to-door sale as defined by 16 C.F.R. 429.1. As noted above, a “door-to-door” sale is defined by the regulation as a transaction in which the seller or his representative “personally solicits” the sale, including those in response to or following an invitation by the buyer, and the buyer’s agreement or offer to purchase is made at a place other than the seller’s place of business.
The trial court found and we agree that this regulation is inapplicable to the transaction at issue herein because plaintiff did not “solicit” the sale as required by the regulation. It is well-settled that a court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed upon review, even though the appellate court may feel its unevaluations and inferences are as reasonable. Rosell v. Esco, 549 So.2d 840 (La.1989) and Dixon v. Northeast Louisiana Power Cooperative, Inc., 524 So.2d 35 (La.App. 2d Cir.1988), writ denied, 526 So.2d 809 (La.1988).
Based upon the record before us, we find the trial court was not manifestly erroneous in concluding that the solicitation of the contract was undertaken primarily by Mrs. Crow. The defendant had apparently decided she wanted to purchase a patio cover before she ever initiated contact with plaintiff. Plaintiff’s meetings with Mrs. Crow were primarily to consummate the transaction which she initiated and solicited. Plaintiff’s appointment to meet defendants at their home was simply to examine the premises in order to reach a final price for the contract and was not in any way a solicitation. The defendants’ invitation to meet with plaintiff was not made for the purpose of allowing plaintiff to make a “sales pitch”, but rather for plaintiff and defendants to discuss specific terms and prices after the decision to purchase had already been made.
We further note that the term “seller” is defined by the regulation as a person engaged in the door-to-door sale of consumer goods or services. There was no evidence presented at trial that plaintiff routinely engaged in door-to-door sales. As this particular transaction did not fall within the definition of door-to-door sales, this regulation does not apply to this plaintiff or to this transaction.

Decree

For these reasons, the judgment of the trial court in favor of plaintiff is AFFIRMED, at defendants’ costs.