A94A2801. AKRON PEST CONTROL et al. v. RADAR EXTERMINATING COMPANY, INC.
(455 SE2d 601)

SMITH, Judge.

We granted appellants' application for interlocutory review to address the question of whether an agreement "not to solicit, either directly or indirectly, any current or past customers" of appellee may

possibly be construed as requiring appellants to turn away clearly *unsolicited* business.

The underlying facts are not in material dispute. In December 1990, appellant Donald Sellers redeemed his 3,300 shares of common stock in Active Pest Control, Inc., pursuant to a Stock Redemption Agreement. Nonparty Donald Lackey then became sole shareholder of Active, which has since merged into appellee Radar Exterminating Company, Inc. ("Radar"). As part of the transaction, Sellers also entered into a nondisclosure/nonsolicitation agreement in which he agreed "not to solicit, either directly or indirectly any current or past customers or current employees of Buyer, (or in the event of a merger, Radar Exterminating Company, Incorporated) whether as a proprietor, partner, joint venture, employer, agent, consultant, officer, or beneficial or record owner for the purpose of providing pest control services of the kind which Buyer provides as its business." The restrictions were to last "for a period of two years from the closing date."

Sellers soon thereafter established corporate appellant Akron Pest Control, Inc. ("Akron"). It is undisputed that Akron did business with former customers of Active (now Radar) within the two-year period covered by the nondisclosure/nonsolicitation agreement. *All* of the evidence presented shows, however, that Sellers in no way sought out the former Active customers who subsequently did business with him through Akron.

Radar brought suit against Sellers and Akron for breach of contract, tortious interference with contractual relations, and an alleged violation of the Uniform Deceptive Trade Practices Act. Sellers and Akron counterclaimed against Radar for sums due under two promissory notes executed by Active prior to its merger with Radar. Sellers and Akron moved for summary judgment on all counts of the complaint and counterclaim, which was denied. The trial court certified the order for immediate review, and Sellers and Akron petitioned this court seeking interlocutory review. The application was granted, and this appeal followed.

1. Sellers contends he in no way solicited former clients and the trial court erred in finding a jury question remaining on this issue. Radar does not dispute the state of the evidence presented on this issue, but instead takes the position that the nondisclosure language "could be understood by the parties to mean that Appellant Sellers *would refuse and, in fact, turn away* pest control business if contacted by any customers on Exhibit 'B' of the Verified Complaint and refuse to hire and, in fact, turn away employees of Active/Radar as of the date of the stock sale if they came to him looking for employment." (Emphasis supplied.) We disagree.

"The cardinal rule in the construction of contracts is to ascertain

the intention of the parties. The language which the parties have used will be looked to for the purpose of finding that intention, which when it is once ascertained will prevail over all other considerations, in determining the nature of the agreement. The question remaining is whether the language of the contract creates an ambiguity which may be explained by parol. A word or phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one. Language which is unambiguous will not be construed as ambiguous based on extrinsic circumstances. Where the language of a contract is plain and unambiguous, no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance. If the terms used are clear and unambiguous they are to be taken and understood in their plain, ordinary, and popular sense. Dictionaries supply the plain, ordinary and popular sense." (Citations, punctuation, and emphasis omitted.) *Race, Inc. v. Wade Leasing*, 201 Ga. App. 340, 341 (1) (411 SE2d 56) (1991).

"Webster's New Intl. Dictionary, 2d ed., defines 'solicit' as 'to entreat, importune . . . to endeavor to obtain by asking or pleading . . . to urge. . . .'" *Mgmt. Compensation Group/Southeast v. United Security Employee Programs*, 194 Ga. App. 99, 102 (2) (389 SE2d 525) (1989). The word has been otherwise defined as: "To appeal for something; to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving; to endeavor to obtain by asking or pleading; to entreat, implore, or importune; to make petition to; to plead for; to try to obtain; and though the word implies a serious request, it requires no particular degree of importunity, entreaty, imploration, or supplication. [Cit.] To awake or incite to action by acts or conduct intended to and calculated to incite the act of giving. [Cit.] The term implies personal petition and importunity addressed to a particular individual to do some particular thing." Black's Law Dictionary, p. 1392 (6th ed. 1990).

The phrase "not to solicit . . . indirectly," though undisputedly a broad statement of the parties' intent with respect to the activity in which Sellers agreed not to engage, is not ambiguous. See *Citadel Corp. v. Sun Chemical Corp.*, 212 Ga. App. 875, 876 (2) (443 SE2d 489) (1994); *Manderson & Assoc. v. Gore*, 193 Ga. App. 723, 730 (5) (389 SE2d 251) (1989). For Sellers to violate the written nonsolicitation agreement at issue would require some affirmative action on his part that could be considered a solicitation in the broadest possible sense. *Marcoin, Inc. v. Waldron*, 244 Ga. 169, 171 (1) (259 SE2d 433) (1979). Radar informs us of no act by Sellers that could possibly be considered a solicitation. Merely *accepting* business that Sellers was forbidden otherwise to seek out for a period of time does not in any sense constitute a solicitation of that business. Id.

Sellers and Akron are entitled to summary judgment on the ques-

tion of whether the nonsolicitation agreement could be violated by failing to turn away the business of former customers of Active. Therefore, except as to Count 4 of Radar's complaint, the judgment is reversed.

2. It is well established that monetary relief is not authorized under the Uniform Deceptive Trade Practices Act, OCGA § 10-1-370 et seq. *Magliaro v. Lewis*, 203 Ga. App. 632, 634-635 (3) (417 SE2d 395) (1992); the Act authorizes only equitable relief. Id. The trial court therefore erred in failing to grant the motion for summary judgment of Sellers and Akron *to the extent of Radar's claim for damages* under that Act.

However, this does not end the inquiry. The arguments of Sellers and Akron on this issue focus solely on whether the undisputed facts in this case make *any relief* under OCGA § 10-1-370 inappropriate as a matter of law; in effect, they seek a determination in this court that an injunction under the Act should not issue against them. That issue, however, is not before us.

This court is without jurisdiction to consider a claim sounding in equity *unless* the relief sought is merely incidental to an underlying legal question. *Beauchamp v. Knight*, 261 Ga. 608 (409 SE2d 208) (1991); Ga. Const. 1983, Art. VI, Sec. VI, Par. III (2). In this case, Sellers and Akron argue that by undisputed evidence, the Active and Akron logos have been shown not to be confusingly similar as a matter of law. That issue of similarity is clearly a "substantive issue of equity in this interlocutory appeal," *Beauchamp*, supra at 609, and therefore a matter within the jurisdiction of the Supreme Court. This is illustrated by the fact that the eight cases discussed in the parties' briefs on appeal are all Supreme Court decisions: *Elite Personnel v. Elite Personnel Svcs.*, 259 Ga. 192 (378 SE2d 117) (1989); *Diedrich v. Miller & Meier &c. Architects & Planners*, 254 Ga. 734 (334 SE2d 308) (1985); *Reis v. Ralls*, 250 Ga. 721 (301 SE2d 40) (1983); *Dolphin Homes Corp. v. Tocomc Dev. Corp.*, 223 Ga. 455 (156 SE2d 45) (1967); *Fraser v. Singer*, 211 Ga. 26 (83 SE2d 599) (1954); *First Fed. Savings &c. Assn. v. First Finance &c. Corp.*, 207 Ga. 695, 697 (64 SE2d 58) (1951); *Gano v. Gano*, 203 Ga. 637 (47 SE2d 741) (1948); *Seybold Baking Co. v. Derst Baking Co.*, 196 Ga. 391 (26 SE2d 536) (1943).

In their statement of jurisdiction required by OCGA § 5-6-37, Sellers and Akron affirmatively aver that this case "involves solely contract and tort claims and counterclaims seeking monetary relief." All questions within their statement of jurisdiction have been answered, and we have reversed the trial court to the extent of any and all such claims for "monetary relief." The case is therefore remanded for such further proceedings as may be necessary to resolve appellee's remaining claim for equitable relief under the Deceptive Trade

Practices Act.

*Judgment reversed and remanded. McMurray, P. J., and Pope, P. J., concur.*

DECIDED MARCH 6, 1995.

Harman, Owen, Saunders & Sweeney, Timothy J. Sweeney, for appellants.

*Decker & Hallman, Richard P. Decker, Peter V. Hasbrouck,* for appellee.