131 P.3d 1230

**ALUMINUM SHAKE ROOFING, INC., Plaintiff/Counterclaim Defendant–Appellee,**

v.

**Roy K. HIRAYASU, Frances N. Hirayasu, Defendants/Counterclaimants–Appellants.**

No. 25011.

Supreme Court of Hawai'i.

April 12, 2006.

Wesley D. Shimazu, Honolulu, On the briefs, for the plaintiff/counterclaim defendant-appellee Aluminum Shake Roofing, Inc.

Ronald Shigekane, Honolulu, of Ayabe, Chong, Nishimoto, Sia & Nakamura, On the briefs, for the defendants/ counterclaimants-appellants Roy K. Hirayasu and Frances N. Hirayasu.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ.; and ACOBA, J., Concurring Separately.

Opinion of the Court by LEVINSON, J.

The defendants/counterclaimants-appellants Roy and Frances Hirayasu [hereinafter, "the Appellants"] appeal from the March 21, 2002 final judgment of the circuit court, the Honorable Richard Pollack presiding, in favor of the plaintiff/counterclaim defendant-appellee Aluminum Shake Roofing, Inc. [hereinafter, "ASR"] and against the Appellants, awarding $26,328.65 in damages, attorneys' fees, and costs.

On appeal, the Appellants contend that the circuit court erred: (1) in ruling that Hawai'i Revised Statutes (HRS) ch. 481C (1993), concerning door-to-door sales,[1] did not apply

---

1. This case hinges on the following definitions contained in HRS § 481C-1, which provides:

 In this chapter, unless the context or subject matter otherwise requires:
 (1) (A) "Door-to-door sale" means (i) a sale of goods or services *solicited* in person and signed by the buyer at a place other than the seller's business address shown on the contract; . . . .
 (B) The term "door-to-door sale" does not include a transaction:
 (i) Made pursuant to prior negotiations in the course of a visit by the buyer to a retail business establishment having a fixed permanent location where the goods are exhibited or the services are offered for sale on a continuing basis; or
 (ii) In which the buyer has initiated the contact and the goods or services are needed to meet a bona fide immediate personal emergency of the buyer, and the buyer furnishes the seller with a separate dated and signed personal statement in the buyer's handwriting describing the situation requiring immediate remedy and expressly acknowledging and waiving the right to cancel the sale within three business days; or
 (iii) Conducted and consummated entirely by mail or telephone; and without any other contact between the buyer and the seller or

to the Appellants' claims and, on that basis, granting the motion for judgment as a matter of law filed by ASR pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 50(a);[2] and (2) in denying the Appellants' HRCP Rule 50(a) motion as to ASR's violation of the same chapter.

For the reasons discussed *infra* in part III, the Appellants' arguments are ultimately unavailing. Accordingly, we affirm the circuit court's judgment.

## I. BACKGROUND

### A. Factual Background

The present matter arose out of a contract between ASR and the Appellants to replace the roof of the Appellants' home.

The Appellants first encountered ASR and learned about the roofing services it offered at a February 2000 home show conducted at the Neil Blaisdell Center. The appellant Roy Hirayasu approached ASR's president, Fred Rehm, at the booth and, after discussing ASR's product, gave Rehm his telephone number, asking that Rehm come to his home to provide an estimate. After that meeting, the Appellants contacted Rehm again by telephone at ASR's warehouse to make an appointment to visit Rehm there. The two parties spoke at the warehouse, and Rehm agreed to go to the Appellants' home later that afternoon to work up an estimate. There is some dispute as to whether a contract was prepared prior to the date that work was scheduled to begin, but, in any

case, on May 8, 2000, when ASR's workers arrived at the Appellants' home to begin installation of the roof, no contract had been signed between the parties. The Appellants therefore asked to speak with Rehm before work began. When Rehm arrived, the parties entered the home to discuss the terms while the workers waited outside. Following some discussion as to the materials to be used and the terms of payment, the Appellants signed a contract, and work commenced. Nevertheless, due to disputes concerning the quality of the workmanship and the nature of the warranty for the new roof, the Appellants subsequently asserted that final payment was not due and owing. On September 25, 2000, ASR brought a breach-of-contract action in the district court to collect upon that debt. The Appellants counterclaimed on October 12, 2000 on four grounds: (1) breach of contract; (2) violation of HRS ch. 481C, *see supra* note 1; (3) fraudulent misrepresentation; and (4) unfair and deceptive trade practices. On December 4, 2000, the lawsuit was transferred to the circuit court for a jury trial.

### B. Procedural History Of The HRS Ch. 481C Claims

On November 15, 2001, ASR filed a motion *in limine* to exclude claims based on HRS ch. 481C. The Appellants responded with a memorandum in opposition on November 21, 2001. On November 28, 2001, ASR followed with a trial memorandum regarding the inapplicability of HRS ch. 481C to the Appellants' asserted claims. On November 29, 2001, the Appellants filed a motion under

---

its representative prior to delivery of the goods or performance of the services; or

(iv) In which the buyer has initiated the contact and specifically requested the seller to visit the buyer's home for the purpose of repairing or performing maintenance upon the buyer's personal property. If in the course of such a visit, the seller sells the buyer the right to receive additional services or goods other than replacement parts necessarily used in performing the maintenance or in making the repairs, the sale of those additional goods or services would not fall within this exclusion.

. . . .

(4) "Seller" means any person, partnership, corporation, association, or other group, however organized, engaged in the door-to-door sale of goods or services.

(Emphasis added.)

**2.** HRCP Rule 50(a) (2000) provides:

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

HRCP Rule 50(a) for a judgment as a matter of law on this issue. Finally, on December 3, 2001, the Appellants filed a memorandum in opposition to a motion for judgment as a matter of law apparently filed by ASR, although the record on appeal does not contain any reference to ASR's motion.

The circuit court conducted a hearing on both parties' motions on December 3, 2001 and granted a judgment as a matter of law in ASR's favor and against the Appellants. In its ruling, the circuit court relied on *Cooper v. Crow*, 574 So.2d 438 (La.Ct.App.1991) (holding that when a customer who evinced an intention to purchase awnings invited the vendor to her home to establish terms and price, the vendor did not "solicit" the sale pursuant to the language of 16 C.F.R. pt. 429, containing federal door-to-door sales regulations similar to HRS ch. 481C), and *State v. Stereo Importers*, 114 Misc.2d 864, 452 N.Y.S.2d 835 (N.Y.Sup.Ct.1982) (holding that, where vendor used ad media to promote off-site liquidation sales, under New York's door-to-door sales act vendor did not "solicit" customers who made initial contact). The circuit court determined that, by analogy, because the Appellants initiated contact with ASR, their claims did "not fall within the purview of HRS chapter 481C because ASR did not solicit the sale as required by this statute." The circuit court noted that, in 1976 amendments to the bill that would become HRS ch. 481C, the legislature removed from the definition of door-to-door sales any transaction "in which the buyer has initiated the contact." (Citing Sen. Stand. Comm. Rep. No. 25–76, in 1976 Senate Journal, at 918.)

On March 21, 2002, following a jury verdict in favor of ASR on all remaining counts, the circuit court entered final judgment on all claims, including the HRS ch. 481C claims, in favor of ASR and against the Appellants.

On March 25, 2002, the Appellants timely filed their notice of appeal to this court.

## II. *STANDARDS OF REVIEW*

### A. *Motion For Judgment As A Matter Of Law*

It is well settled that a trial court's rulings on motions for judgment as a matter of law are reviewed *de novo*.

When we review the granting of a [motion for judgment as a matter of law], we apply the same standard as the trial court.

A [motion for judgment as a matter of law] may be granted only when after disregarding conflicting evidence, giving to the non-moving party's evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in the non-moving party's favor, it can be said that there is no evidence to support a jury verdict in his or her favor.

*Miyamoto v. Lum*, 104 Hawai‘i 1, 6–7, 84 P.3d 509, 514–515 (2004) (internal citations omitted).

### B. *Interpretation Of Statutes*

"The interpretation of a statute is a question of law reviewable *de novo*." *Gray v. Admin. Dir. of the Court*, 84 Hawai‘i 138, 144, 931 P.2d 580, 586 (1997). Furthermore, our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining the legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray,* 84 Hawai'i at 148, 931 P.2d at 590. This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1-15(2). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1-16 (1993).

*State v. Cullen,* 86 Hawai'i 1, 8-9, 946 P.2d 955, 962-63 (1997) (some brackets and internal citations omitted).

C. *Findings Of Fact And Conclusions Of Law*

 In this jurisdiction, a trial court's [findings of fact (FOFs)] are subject to the clearly erroneous standard of review. *State v. Hutch,* 75 Haw. 307, 328, 861 P.2d 11, 22 (1993). "An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed." *Id.*

" 'A [conclusion of law (COL)] is not binding upon an appellate court and is freely reviewable for its correctness.' " *AIG Hawai'i Ins. Co. v. Estate of Caraang,* 74 Haw. 620, 628, 851 P.2d 321, 326 (1993) (quoting *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 119, 839 P.2d 10, 28 (1992)). This court ordinarily reviews COLs under the right/wrong standard. *In re Estate of Holt,* 75 Haw. 224, 232, 857 P.2d 1355, 1359 (1993). Thus, " '[a] COL that is supported by the trial court's [FOFs] and that reflects an application of the correct rule of law will not be overturned.' " *Estate of Caraang,* 74 Haw. at 628-29, 851 P.2d at 326 (quoting *Amfac, Inc.,* 74 Haw. at 119, 839 P.2d at 29). "However, a COL that presents mixed

questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case." *Id.* at 629, 851 P.2d at 326 (quoting *Amfac, Inc.,* 74 Haw. at 119, 839 P.2d at 29) (internal quotation marks omitted). *State v. Furutani,* 76 Hawai'i 172, 179-80, 873 P.2d 51, 58-59 (1994).

*Allstate Ins. Co. v. Ponce,* 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004). (Some internal citations omitted.)

III. DISCUSSION

The Appellants assert that the circuit court erred in ruling that the transaction did not fall within the purview of HRS ch. 481C by incorrectly determining: (1) that there was a blanket exclusion for "buyer-initiated transactions" under the chapter; (2) that the chapter requires that the seller be routinely engaged in door-to-door sales activities for its protections to apply; and (3) that language in the chapter granted the circuit court discretion in determining whether the transaction in question qualified as a door-to-door sale.[3]

A. *The Circuit Court Erred In Interpreting HRS Ch. 481C As Excluding All Buyer–Initiated Transactions.*

The Appellants contend that the circuit court erred when it: (1) ruled that, because the Appellants were the first to initiate contact between the parties, ASR had not "solicited" the transaction; and (2) therefore concluded that the Appellants' claims did not fall within the purview of HRS ch. 481C. They cite to *Weatherall Aluminum Products Co. v. Scott,* 71 Cal.App.3d 245, 139 Cal.Rptr. 329 (1977) (holding that a buyer's invitation to visit the home to provide an estimate for home improvements did not automatically divest the buyer of protections under Califor-

---

**3.** Determination that this transaction did not fall within the definition of a door-to-door sale found in HRS § 481C–1, *see supra* note 1, directly affects the ultimate outcome of the parties' dispute. It is undisputed that ASR did not comply with the detailed requirements of HRS § 481C–2 as to supplying the buyer with proper written notification of the consumer's right to cancel the

transaction. That failure would, if HRS ch. 481C were applicable to this transaction, directly lead to a conclusion that ASR had engaged in unfair and deceptive business practices, pursuant to HRS § 481C–2. That, in turn, would render the contract unenforceable by the seller, under HRS § 481C–4(b).

nia's door-to-door sales laws), for the proposition that the fact that a buyer initiates contact does not automatically remove the transaction from the protections of HRS ch. 481C. In its answering brief, ASR argues that "solicitation" inherently requires an initial contact by the seller and that buyer-initiated transactions are therefore outside the purview of the chapter.

Specifically, the Appellants contend that the circuit court misconstrued the structure of HRS ch. 481C with regard to "buyer-initiated transactions" and overly relied on general summary statements concerning such transactions contained in a legislative committee report, *see* Sen. Stand. Comm. Rep. No. 25–76, in 1976 Senate Journal, at 918. To the extent the circuit court relied in reaching its determination that ASR did not solicit the Appellants on the fact that the Appellants made initial contact, the Appellants are correct.

1. *The structure of HRS ch. 481C*

The Appellants note that HRS ch. 481C contains two specific exclusions from its protections under circumstances in which the buyer makes initial contact—one for emergency repairs and one for repair or maintenance of personal property. *See* HRS § 481C–1(B)(ii), (iv), *supra* note 1. The Appellants contend that the circuit court's interpretation of HRS ch. 481C as excluding *all* buyer-initiated transactions would render these two specific exclusions superfluous, thereby violating the rule of statutory interpretation that requires courts to avoid rendering any provision redundant or superfluous. *See, e.g., State v. Mueller,* 102 Hawai‘i 391, 395, 76 P.3d 943, 947 (2003); *State v. Cummings,* 101 Hawai‘i 139, 145, 63 P.3d 1109, 1115 (2003); *Coon v. City & County of Honolulu,* 98 Hawai‘i 233, 259, 47 P.3d 348, 374 (2002).

HRS § 481C–1(1)(A)(i) defines a door-to-door sale as "a sale of goods or services solicited in person and signed by the buyer at a place other than the seller's business address shown on the contract." *See supra* note 1. The following section then lists four exceptions that are *not* to be considered door-to-door sales under the law, two of which involve buyer-initiated transactions. *See* HRS § 481C–1(1)(B), *supra* note 1. Particularly enlightening is the last sentence of HRS § 481C–1(1)(B)(iv), which provides that if the buyer who made initial contact purchases any *new* goods or services in relation to the repair or maintenance of his or her personal property, the protections of HRS ch. 481C apply. These provisions demonstrate by implication that, if the buyer initiates contact for something other than "a bona fide personal emergency" or "for the purpose of repairing or performing maintenance upon the buyer's personal property," the transaction falls within the definition of a door-to-door sale, and the protections of this act apply. The mere fact that a buyer has made the initial contact does not render HRS ch. 481C automatically inapplicable to a contract negotiated at the buyer's home.

As the court in *Weatherall* reasoned, in addition to protecting homeowners from *uninvited* high-pressure sales pitches, door-to-door sales laws such as HRS ch. 481C also serve to protect consumers who may find themselves regretting making the initial contact:

> A second and equally serious pressure arises . . . from the fact that the seller may be an intimidating presence once inside the buyer's home. A reluctant buyer can easily walk away from a seller's place of business, but he cannot walk away from his own home, and he may find that the only practical way of getting the seller to leave is to agree to buy whatever the seller is selling. This latter type of pressure may arise regardless of whether or not the buyer invited the seller to call at his residence.

139 Cal.Rptr. at 331. As the Appellants argue, to establish a blanket exclusion for any buyer-initiated transaction would allow vendors to respond to trade show inquiries with high pressure sales techniques at people's homes without fearing the remedies afforded under HRS ch. 481C. Given the focus of the chapter on guarding against vendor coercion during at-home transactions, the proper inquiry must focus on the presence of coercive pressure, rather than on a blanket rule turning on which party initiated

contact. If negotiations occur in the home, then the protections of HRS ch. 481C are not *automatically* suspended merely because the buyer initiated contact with the vendor, so long as the totality of the circumstances establish a true effort to "solicit" on the part of the vendor.

### 2. *The 1976 senate committee report*

In determining that buyer-initiated transactions fell outside the purview of HRS ch. 481C, the circuit court also relied on a summary of amendments to the draft bill contained in the Senate Committee on Consumer Protection's report on Senate Bill 1780–76, which was ultimately codified as HRS ch. 481C. The report stated in relevant part that the "Committee amended the bill by removing from the definition of a door-to-door sale any transaction: . . . (d) in which the buyer had initiated the contact." Sen. Stand. Comm. Rep. No. 25–76, in 1976 Senate Journal, at 918. The circuit court, however, misinterpreted the legislature's intent behind the changes to the draft law.

By removing the language regarding buyer-initiated transactions from earlier general definitions of door-to-door sales, while retaining them in the two specific exclusions discussed *supra* in part III.A.1, it appears that the legislature drafted the law, not to *exclude* all buyer-initiated transactions, but to *include* all buyer-initiated transactions *except* those laid out in two carefully crafted exclusions.[4] *See also* Hse. Stand. Comm. Rep. No. 778–76, in 1976 House Journal, at 1651 (recommending Senate Bill 1780–76 as a way of harmonizing federal and state law on door-to-door sales, retaining those federal and state provisions, respectively, that offer the *greater* protection to consumers).

In light of the statutory provisions excluding two specific types of buyer-initiated transactions from the purview of HRS ch. 481C, as well as the consumer protection

policies underlying it, the circuit court erred to the extent that it relied on the fact that the buyer initiated the transaction to determine that no solicitation had occurred.

### B. *The Circuit Court Erred In Requiring The Appellants To Establish That ASR Regularly Engaged In Door–To–Door Sales Activities.*

HRS § 481C–1(4) defines a seller, for the purposes of the chapter, as "any person, partnership, corporation, association, or other group . . . engaged in the door-to-door sale of goods or services." *See supra* note 1. According to the circuit court, the court in *Cooper,* facing similar language, held that, inasmuch as there was no pattern of door-to-door sales, there could be no solicitation under the terms of the law. The circuit court similarly determined that, because the Appellants failed to establish a pattern by ASR of engaging in door-to-door sales, HRS ch. 481C could not apply.

■ By the plain language of the statute, "sale" is couched in the singular. Moreover, by its plain language, the statute does not require the establishment of a pattern of door-to-door sales activities. Rather it requires that the vendor in question be involved in the activity defined as a door-to-door sale in HRS § 481C–1(1)(A): "a sale of goods or services solicited in person and signed by the buyer at a place other than the seller's business address shown on the contract." While a given transaction *may* include activity that involves a pattern of door-to-door sales, the law does not *require* such activity for the buyer to receive its protections. This is perfectly consistent with the policies underlying HRS ch. 481C. The concerns that prompted the legislation are no less germane to a sale that is not part of a vendor's ongoing scheme or pattern of conduct. It was therefore error for the circuit

---

4. In fact, that same committee amended the original bill to *include* those buyer-initiated transaction exclusions, ·following February 11, 1976 testimony from the State Office of Consumer Protection suggesting the change. *See Senate Committee on Consumer Protection on Senate Bill 1780–76,* 8th State Legis., Regular Session (1976) (testimony of Gordon Uechi, Office of Consumer

Protection). *Compare* S.B. 1780–76 as introduced on January 26, 1976 *with* Senate Draft 1 at 9–9a, which the Senate Committee on Consumer Protection approved as amended on February 20, 1976 and which contains the new, current language with the exclusions. *See* 1976 Senate Journal at 188.

court to place the burden of establishing such a pattern on the Appellants.

C. *The Circuit Court Properly Applied The Prefatory Language In HRS § 481C–1 To Determine That ASR Did Not Solicit The Appellants Under The Meaning Of The Chapter.*

The Appellants contend that the circuit court overreached its authority in applying the prefatory language "unless the context or subject matter otherwise requires," contained in HRS § 481C–1, to determine that, on the evidence before it, the Appellants had failed to establish that the transaction qualified as a door-to-door sale as defined by HRS § 481C–1(1)(A), *see supra* note 1. They assert that the substantive provisions of HRS ch. 481C are plain and unambiguous and accuse the circuit court of "wa[ ]ving [this language] as a talisman to change the meaning of the statute." ASR in turn asserts that, based on the underlying facts, the circuit court correctly exercised the discretion afforded by HRS ch. 481C to determine that the chapter did not apply.

We hold that the circuit court correctly interpreted the relevant provisions of HRS § 481C–1 in reaching its ultimate conclusion.

The phrase "[i]n this chapter, unless the context or subject matter otherwise requires" is found in only three other Hawaiʻi statutes, and all preface statutory definitions of terms.[5] The legislative history underlying

these acts is scant and sheds no light on the reasoning behind the inclusion of the phrase. Nevertheless, the phrase's plain language clearly affords a measure of discretion to the court to examine the totality of the circumstances in a particular case in light of HRS ch. 481C's underlying rationale and public policy.

In the present matter, the circuit court was faced with the task of determining whether a reasonable jury could find that ASR "solicited" the Appellants within the meaning of HRS ch. 481C.[6] On the undisputed facts before this court, it cannot be said that the circuit court's decision leaves us with a firm conviction that a mistake has been committed.

■ The Appellants approached ASR and requested a home visit to discuss the suitability and cost of a copper roof. The Appellants contacted ASR again and visited the company warehouse at least once prior to the start of work. ASR's president visited the Appellants at their home on several occasions to discuss the project with them. The two parties agreed on a date for work to begin on a new roof, and Mr. Hirayasu took vacation during that period in order to be at home to monitor the work. It was not clearly erroneous for the circuit court to conclude that ASR did not move the Appellants to action or importune them to purchase the copper roof, such that the transaction was "solicited" by ASR.[7] *See supra* note 6.

5. *See* HRS §§ 454–1 (1993) ("Mortgage Brokers and Solicitors"), 476–1 (Supp.2000) ("Credit Sales"), and 556–1 (1993) ("Uniform Fiduciaries Act").

6. There is a common theme in the case law of other jurisdictions that to "solicit" a transaction requires a personal petition and an intent to rouse a desire in, or to excite to action, the individual being solicited. *See Akron Pest Control v. Radar Exterminating Co., Inc.,* 216 Ga.App. 495, 455 S.E.2d 601, 603 (1995) (stating that the term "implies personal petition and importunity addressed to a particular individual to do some particular thing") (citing *Black's Law Dictionary* 1392 (6th ed.1990)); *Koffler v. Joint Bar Ass'n,* 51 N.Y.2d 140, 432 N.Y.S.2d 872, 412 N.E.2d 927, 931 (1980) (" 'solicit' means to move to action, to endeavor to obtain by asking, and implies personal petition to a particular individual to do a particular thing") (citing *Webster's Third New International Dictionary* 2169; *Black's Law Dic-*

*tionary* 1248–49 (5th ed.)); *Bittiker v. State Bd. of Registration for Healing Arts,* 404 S.W.2d 402, 405 (Mo.Ct.App.1966) (relying on *Webster's International Dictionary* to find the plain ordinary meaning of solicit to be "to awake or excite action; to rouse a desire in; to summon; to appeal to; to invite; allure").

7. In contrast to the issue of excluding all buyer-initiated transactions, the circuit court properly relied on *Cooper* in its determination that the facts of this case, like those in *Cooper,* did not establish a solicitation by the vendor as a matter of law. In both cases, there was substantial evidence that the buyer had decided to make the purchase before initiating contact with the vendor and that the subsequent meetings were primarily

to consummate the transaction which [the buyer] initiated and solicited. [The buyer's] appointment to meet [the vendor] was simply to

■ "This court may affirm a judgment of the trial court on any ground in the record which supports affirmance." *Taylor–Rice v. State*, 91 Hawai'i 60, 73, 979 P.2d 1086, 1099 (1999). Notwithstanding the other errors discussed *supra* in parts III.A–B, we affirm the circuit court's judgment on the ground that it correctly applied the discretionary language of HRS § 481C–1 in ruling that ASR did not "solicit" the Appellants so as to bring this transaction under the provisions of HRS ch. 481C.

## IV. CONCLUSION

Based on the foregoing analysis, we therefore affirm the March 21, 2002 final judgment of the circuit court in favor of Aluminum Shake Roofing, Inc. and against the Appellants, awarding $26,328.65 in damages, attorneys' fees, and costs.

Concurring Opinion by ACOBA, J.

I concur in the result. The first circuit court (the court) ruled on the motion for directed verdict by Plaintiff/Counterclaim Defendant–Appellee Aluminum Shake Roofing, Inc. (ASR) with respect to Hawai'i Revised Statutes (HRS) chapter 481C after all the evidence had been presented to the jury. Its ruling was based on a plain reading of the statute and the evidence adduced in the case. As it stated:

> The issue is whether the transaction between the counter[ ]claim plaintiff[s Roy K. and Frances N. Hirayasu (the Hirayasus) ] and counter[ ]claim defendant [ASR] constituted a door to door sale as defined by HRS [c]hapter 481C.
>
> When construing a statute, the court is bound by the plain, clear and unambiguous language of the statute, unless literal construction would produce an absurd, unjust result, and would be clearly inconsistent with the purpose and policy of the statute.

Thereafter the court concluded that a plain reading of the statute indicated the sale must be solicited in person by the seller.

According to 481C–1(1)(A), "door to door sale" means: "A sale of goods or services *solicited in person* and signed by the buyer at a place other than the seller's business address shown on the contract." Therefore, the plain language of this subsection requires the sale to be "solicited in person" by the seller in order for it to fall within the definition of door to door sale.

(Emphasis added.) The court recounted there was a failure of proof as to the seller's solicitation under the facts of the case:

> In this case, it is undisputed that [Defendant/Counterclaimant–Appellant Roy K. Hirayasu (Mr. Hirayasu) ] approached [ASR] at a "home show" in February 2000 and expressed his specific interest in a copper roof. It is further undisputed that Mr. Hirayasu initiated the second contact with ASR in order to discuss specifically the possible installation of a copper roof on his home. It is at Mr. Hirayasu's request that ASR visited the Hirayasu's residence and inspect[ed] the premises in order to obtain an estimate for the job.

Based on the facts, the court determined the statute did not apply because ASR did not solicit the sale.

> Therefore, the court finds that, on this basis, the underlying transaction between the Hirayasus and ASR does not fall within the purview of HRS [c]hapter 481C *because ASR did not solicit the sale as required by this statute.*

(Emphasis added.)

When construing a statute, "the fundamental starting point is the language of the statute itself[ and] where the statutory language is plain and unambiguous, [the court's] sole duty is to give effect to its plain and obvious meaning." *State v. Kalama*, 94 Hawai'i 60, 64, 8 P.3d 1224, 1228 (2000) (internal quotation marks and citations omitted). Under HRS § 481C–1(5), " '[s]ale' means and includes any sale ... of goods *to a buyer* pursuant to a contract." (Emphasis added.)

---

examine the premises in order to reach a final price for the contract and was not in any way a solicitation. The [buyer]'s invitation to meet with [the vendor] was not made for the purpose of allowing [the vendor] to make a "sales

pitch," but rather for [the parties] to discuss specific terms and prices after the decision to purchase had already been made.
*Cooper,* 574 So.2d at 443.

Under HRS § 481C–1(1)(A), the term "sale" is employed in the definition of door-to-door sale. As mentioned before, a " '[d]oor-to-door sale' means (i) a sale of goods or services solicited in person[.]" "Solicitation" is not defined in the statute. When a term is not defined in a statute, we may resort to a dictionary to determine its meaning. *Leslie v. Bd. of Appeals of County of Hawai'i*, 109 Hawai'i 384, 393, 126 P.3d 1071, 1080 (2006) (noting that "[w]e may resort to legal or other well accepted dictionaries as one way to determine the ordinary meaning of certain terms not statutorily defined") (internal quotation marks and citation omitted). "Solicitation" is defined as "asking; enticing; urgent request." *Black's Law Dictionary* 1392 (6th ed.1990). Because "sale" means a sale to a buyer, the solicitation contemplated in HRS chapter 481C must be one made by the seller. Hence, under the facts recounted I believe the court was correct in determining that the seller did not solicit the sale, and, thus, it was incumbent upon the Hirayasus to overcome the threshold requirement in HRS chapter 481C of a seller's solicitation.

Therefore, I do not agree with the majority that "the [court] erred to the extent that it relied on the fact that the buyer initiated the transaction to determine that no solicitation had occurred." Majority opinion 110 Hawai'i at 254, 131 P.3d at 1236. Rather, this is the gravamen of an initial determination under HRS chapter 481C. That being the case, there is no need for the majority to go beyond the foregoing analysis. The court did note as an alternative basis, relying on *Cooper v. Crow*, 574 So.2d 438 (La.Ct.App. 1991), that chapter 481C did not apply if the seller was not engaged in going door to door to make sales. Its decision however, in the main and in the first instance, rested on the application of HRS § 481C–1(1)(A), (4) and (5), and on that ground I believe the court's ruling must be affirmed.