A06A0348. CALLAHAN et al. v. COX.
(631 SE2d 405)

RUFFIN, Chief Judge.

Eugenia Cox, as executrix of the estate of Pauline White, filed suit against David and Ann Callahan, alleging that the defendants defaulted on a promissory note to White. The Callahans answered, asserting that their obligations under the note terminated upon White's death. The parties filed cross-motions for summary judgment, and the trial court found in favor of Cox. As we find the trial court erred in so ruling, we reverse.

" 'Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.' "[1] In reviewing the grant of summary judgment, we apply a de novo standard of review, and we view the evidence, and all reasonable conclusions and inferences drawn therefrom, in a light most favorable to the nonmovant.[2]

Viewed in this manner, the record demonstrates that White worked as a real estate agent, and she had a long-standing business relationship with the Callahans. According to Ann Callahan's affidavit, the relationship also developed into a friendship, with White

---

[1] *Rainier Holdings, Inc. v. Tatum,* 275 Ga. App. 878 (622 SE2d 86) (2005).
[2] See id.

visiting the Callahans, attending a family wedding, and discussing personal matters. Starting in 1989, White began lending the Callahans money, and the parties executed multiple promissory notes.

In February 1996, the Callahans executed a promissory note in favor of White for the amount of $40,400. At White's suggestion, Ann Callahan also typed a cancellation agreement — signed by both the Callahans and White — which provided as follows:

> This agreement is referenced to Note bearing [the] same date between David & Ann Callahan and [Pauline] White in the principal amount of $40,400.00.
>
> It is agreed that upon Payment In Full or my death, which ever shall occur first, the above referenced note shall be considered Paid In Full and all obligations [met] and honored. This agreement shall be binding provided all payments are made in a timely manner and are current.

The Callahans made payments under the note until White's death on September 24, 1997. Although payments were due under the note on the fifteenth of each month, the Callahans concede that all payments were not made by that date. The record shows that, of the eighteen payments made before White's death, six were made between one and five days past the due date.

Cox was named executrix of White's estate, and she filed suit against the Callahans, alleging that they had defaulted on the promissory note. The Callahans moved for summary judgment, contending that the note was "self-canceling" upon White's death. Cox filed a cross-motion for summary judgment in which she argued that: (1) the separate cancellation agreement lacked valid consideration; (2) the Callahans' failure to pay timely rendered the agreement unenforceable; and (3) White lacked capacity to execute the self-cancellation agreement. The trial court found that, under the express terms of the agreement, the self-executing cancellation provision was only enforceable if the Callahans paid timely under the note. As the Callahans had made six payments beyond the due date, the court ruled that Cox was entitled to judgment as a matter of law. In four enumerations of error, the Callahans appeal this ruling.

First, we must consider Cox's contention that the separate cancellation agreement lacked consideration and thus is unenforceable. "Under Georgia rules of contract construction, where multiple documents are executed at the same time in the course of a single

transaction, they should be construed together."[3] Here, the cancellation agreement was executed contemporaneously with the promissory note, and the agreement expressly refers to the promissory note. As such, the two documents may be considered as a single transaction.[4] And Cox does not challenge the validity of the consideration for the loan agreement. Under these circumstances, we reject Cox's contention that the agreements — and the consideration supporting them — should be viewed separately.

Next, we must consider Cox's argument that, even if valid, the cancellation agreement was nonetheless unenforceable because the Callahans failed to comply with its terms. In this regard, both parties cite *Jones v. Darling*, which holds that "[a] note and covenant not to sue thereon amounting to a release may be executed contemporaneously, and the effect of the release will be to bar collection of the note."[5] However, before such release may take effect, all conditions precedent must be met.[6]

Here, Cox argues that the cancellation agreement was conditioned upon the Callahans remaining timely in paying the promissory note. According to Cox, the Callahans made six payments beyond the due date, which precludes them from enforcing the cancellation agreement. The Callahans, on the other hand, assert that White's continued acceptance of payments constituted a waiver of the requirement that payments be made by the fifteenth of each month.

We agree that there is evidence that the parties mutually departed from the requirement that payments be made by the fifteenth of each month. Pursuant to OCGA § 13-4-4, where parties to a contract "depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement." "As a general rule, evidence of acceptance by a creditor of repeated, late, irregular payments from a debtor creates a factual question as to the formation of a quasi new agreement."[7] Here, the evidence — viewed favorably to the Callahans — shows that White accepted multiple payments beyond the fifteenth of each month and never indicated that she would require strict compliance with the terms of the promissory note. Moreover, the record demonstrates that the Callahans actually

---

[3] *Martinez v. DaVita, Inc.*, 266 Ga. App. 723, 727 (598 SE2d 334) (2004).

[4] See id.; *Loewenherz v. Weil*, 33 Ga. App. 760, 771 (3) (127 SE 883) (1925).

[5] 94 Ga. App. 641, 643 (95 SE2d 709) (1956).

[6] See id.

[7] (Punctuation omitted.) *Quintanilla v. Rathur*, 227 Ga. App. 788, 792 (2) (490 SE2d 471) (1997).

made all payments due.[8] Under these circumstances, an issue of fact remains as to whether White waived the note's requirement for payment by the fifteenth of each month.

Nonetheless, the Callahans are not entitled to judgment as a matter of law. In moving for summary judgment, Cox raised the issue of White's capacity to execute the cancellation agreement. White, who was 90 years old when she signed the agreement, had been diagnosed with Alzheimer's Disease. Cox included in the record an affidavit from White's physician, in which he averred that from September 1995 onward, White "was incompetent to deal with complex business decisions, and she lacked the requisite mental capacity to understand, appreciate or comprehend" the cancellation agreement. "Capacity to enter a contract, or lack thereof, is a jury question."[9] As issues of fact remain, this case must be decided by a jury.[10]

*Judgment reversed. Smith, P. J., and Phipps, J., concur.*

DECIDED MAY 12, 2006.

*Dietrick, Evans, Scholz & Williams, Paul A. Dietrick*, for appellants.

*LaFon & Hall, W. Courtney LaFon, Beverly J. Hall*, for appellee.

---

[8] Compare id. (no mutual departure as to payment terms where borrower failed to make all payments).
[9] *Guthrie v. Guthrie*, 259 Ga. App. 751, 754 (577 SE2d 832) (2003).
[10] See id.