**THIRD DIVISION
DOYLE, P. J.,
REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**August 26, 2022**

# In the Court of Appeals of Georgia

A22A0902. PATEL v. PATEL.

PHIPPS, Senior Appellate Judge.

In this contract dispute, Shama Patel sued her brother, Prakash Patel, alleging that (1) she and Prakash entered into a written agreement in which Shama agreed to transfer her 50 percent ownership interest in a house in London to Prakash in exchange for a payment of £24,850 from Prakash, and (2) Prakash breached that agreement by failing to pay Shama the £24,850. Shama asserted claims for rescission, breach of contract, and attorney fees and costs of litigation. The trial court granted summary judgment to Shama on her claim for breach of contract and denied summary judgment to Prakash. Prakash appeals, contending that the trial court erred by finding that the alleged agreement was supported by consideration and unambiguously required him to personally pay the £24,850 to Shama. Prakash also argues that the

trial court made additional findings of fact that were unsupported by the evidence and contradicted by evidence presented by him. Finally, Prakash asserts that Shama's claims are barred by the Statute of Frauds. We reverse the trial court's grant of summary judgment to Shama because we find that there is a material dispute as to whether there was consideration for the alleged agreement, but we affirm the trial court's denial of summary judgment to Prakash, as he has not met his burden of showing the absence of any other disputed issues of material fact.

The record shows that in October 2012, Prakash and Shama's father, Indubhai Patel, who was beginning to suffer from dementia, granted Prakash power of attorney over his property and financial affairs. At some point prior to April 2013, Indubhai transferred ownership of a house in London to Prakash and Shama. After the transfer from Indubhai, Prakash and Shama each owned a 50 percent interest in the house. During mid-2014, Prakash and Shama discussed the possibility of voiding the original transfer from Indubhai and selling the house to pay Indubhai's expenses. E-mails from Prakash and Shama discussing the possible sale of the house also refer to repaying Shama for payments that Shama contends on appeal were funds she "advanced [to] her sister Pallavi . . . against [Pallavi's] anticipated interest in Indubhai's estate."

2

Ultimately, in November 2014, Prakash, Shama, and Indubhai met and signed a document transferring title of the London house from Prakash and Shama as transferors to Prakash and Indubhai as transferees. The transfer document provides that Prakash and Indubhai "are to hold the property [i]n trust for themselves as tenants in common in equal shares." The transfer document also states that the transfer "is not for money or anything that has monetary value." As an "additional provision," the document states that the transfer "is made in consideration of the natural love and affection that Shama . . . has for her father Indubhai[.]"

During the November 2014 meeting, Prakash and Shama signed a document[1] formatted as a letter from Prakash to Shama which states, in relevant part:

RE: Full and Final Settlement of UK House Transfer

Please find attached:

  1. House share transfer document prepared by Anthony Gold solicitors in the UK[; and]

  2. Various Barclays Bank documents to a) confirm your signature on the account (the Norbury branch does not have your signature card),

_____

[1] Prakash contends that he and Shama drafted this document together. Shama maintains that Prakash drafted the document.

b) authorize me as a third party to handle his current account and c) remove you from the Joint current account[.]

Once you have signed these documents, I will send them to Sean Carroll and Barclays Bank, as appropriate.

I confirm that once I have notification from Sean Carroll, Anthony Gold that the UK house transfer has been recorded, as full and final settlement of the money you have paid to Pallavi on behalf of Dad, I will authorize the transfer of £24,850 to your following account in the UK:

> Barclays Bank,
> Account Name Mrs S R Patel
> Account Number [deleted]
> Sort Code [deleted]

Indubhai died in November 2016. In his will, Indubhai left all of his property to Prakash. Shama sued Prakash in October 2019, alleging that she entered into a written agreement with Prakash in November 2014 to transfer her 50 percent interest in the house to Prakash in exchange for a payment of £24,850 from Prakash and that Prakash breached that agreement by failing to pay Shama the £24,850. At her deposition, Shama clarified that the "written agreement" referred to in her complaint is the November 2014 letter from Prakash to Shama. Shama also testified that she had

4

loaned money to her sister Pallavi, and that her lawsuit contended that Prakash was liable for Pallavi's debt.

Prakash subsequently filed a motion for summary judgment, arguing that the funds to pay the debt that Pallavi (or Indubhai) allegedly owed to Shama were to come from their father's assets, and that Prakash never agreed to personally pay Shama any amount. Furthermore, according to Prakash, Shama's claims were barred due to a lack of consideration and by the Statute of Frauds. Shama also filed a motion for partial summary judgment, contending that the November 2014 letter contains all of the elements of a valid contract and was supported by consideration. Shama sought summary judgment on her claims for breach of contract and for attorney fees and costs of litigation. Following a hearing, the trial court denied Prakash's motion for summary judgment and granted Shama's motion for summary judgment as to her breach-of-contract claim. This appeal followed.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*High Tech Rail & Fence v. Cambridge Swinerton Builders*, 363 Ga. App. 226, 228-229 (871 SE2d 73) (2022) (citation and punctuation omitted). "Because this opinion addresses cross-motions for summary judgment, we will construe the facts in favor of the nonmoving party as appropriate." *Plantation at Bay Creek Homeowners Assn. v. Glasier*, 349 Ga. App. 203, 204 (825 SE2d 542) (2019) (citations and punctuation omitted).

1. Prakash contends that the trial court erred in finding that the alleged agreement was supported by consideration. We agree.

"To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." OCGA § 13-3-1. In turn, "[t]o constitute consideration, a performance or a return promise must be bargained for by the parties to a contract. . . . A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." OCGA § 13-3-42 (a), (b). And, "[t]he performance or return promise may be given to the promisor or to some other person." OCGA § 13-3-42 (d). "A consideration is essential to a contract which the law will enforce." OCGA § 13-3-40 (a).

6

"Under Georgia rules of contract construction, where multiple documents are executed at the same time in the course of a single transaction, they should be construed together." *Callahan v. Cox*, 279 Ga. App. 368, 369-370 (631 SE2d 405) (2006) (citation and punctuation omitted). Here, the house transfer document was executed contemporaneously with the November 2014 letter, and the November 2014 letter expressly refers to the house transfer document. "As such, the two documents may be considered as a single transaction." Id.

The trial court concluded that valid consideration existed because Prakash received a benefit by Shama's transfer of her 50 percent of the house. Specifically, the trial court determined that, upon the transfer, Prakash became a tenant in common with his father for the entire property, "which would automatically give more ownership to [Prakash] upon his father's passing." In addition, the court determined that Indubhai's increased ownership benefitted Prakash because Indubhai's will provided that all of his assets were to go to Prakash. Prakash argues that he received no benefit from the transfer because he owned 50 percent of the real property before the transfer and the same 50 percent after the transfer.

Pretermitting whether Prakash benefitted from Shama's transfer of her interest in the house, Shama's transfer of her interest in the house constitutes consideration

7

for Prakash's promise only if it was "sought by [Prakash] in exchange for his promise and [was] given by [Shama] in exchange for that promise." See OCGA § 13-3-42 (a), (b), (d). Shama contends that she agreed to transfer her interest in the house "in exchange for Prakash's transfer of £24,850 to [her]" and that Prakash "agreed to pay [her] £24,850 for the transfer of her interest in the house." At her deposition, Shama testified that she understood that Prakash would pay her if she transferred her share of the house. Furthermore, the November 2014 letter states that Prakash will authorize the transfer of £24,850 to Shama's bank account after he receives notification that the house transfer document has been recorded. Thus, there is evidence from which a jury could find that Shama agreed to transfer her interest in the house in exchange for a promise by Prakash to authorize the transfer of £24,850 to her bank account, and that, as a result, Prakash's promise was supported by consideration.

On the other hand, there is evidence in the record from which a jury could find that Shama did not transfer her interest in the house in exchange for Prakash's promise. As Prakash points out, the house transfer document, which was executed contemporaneously with the November 2014 letter, expressly states that the house "transfer is not for money or anything that has a monetary value" and that "[t]his

8

[t]ransfer is made in consideration of the natural love and affection that Shama Rajesh Patel has for her father Indubhai Motibhai Patel." As stated previously, because the house transfer document and the November 2014 letter were executed at the same time in the course of a single transaction, they must be construed together. *Callahan*, 279 Ga. App. at 369-370. Based on this evidence, a jury could find that Shama transferred her interest in the house for love and affection for her father, not in exchange for Prakash's promise to authorize the transfer of £24,850 to her bank account.

Alternatively, Prakash points to evidence in the record showing that Shama's motivation for transferring her interest in the house was to avoid creditors. In a July 2014 e-mail, Shama told Prakash, "I would like to quit claim Dad's house to you asap so you own it 100% and make sure that things are handled in the correct manner and to make sure it is not tied up in any legal issues because of me. I don't want anyone else to have any claims on any part of our Dad[']s house." The next day, in another e-mail to Prakash, Shama stated, "Please let me know of the transfer of the house as soon as possible or shall I just quit claim my portion back to Dad as I don't think I have much time after we file that things will start shooting off from the other side, thanks[.]" Although Shama did not ultimately quit claim her interest in the house to

9

either Prakash or her father, these e-mails are evidence from which a jury could find that Shama did not transfer her interest in the house in exchange for Prakash's promise to authorize the transfer of funds to her bank account.

Under these circumstances, genuine issues of material fact remain regarding whether Shama's transfer of her interest in the house constitutes consideration for Prakash's promise to authorize the transfer of £24,850 to Shama's bank account. See OCGA § 13-3-42 (a), (b). Accordingly, the trial court erred in granting summary judgment to Shama. See OCGA § 13-3-40 (a) ("A consideration is essential to a contract which the law will enforce."); see also generally *High Tech Rail & Fence*, 363 Ga. App. at 228-229.

2. The trial court concluded that the November 2014 letter (a) is not ambiguous and (b) required Prakash to authorize the payment of £24,850 to Shama's bank account. Pretermitting whether the November 2014 letter is a valid agreement, we disagree with Prakash's contention that the trial court erred by determining that the November 2014 letter is unambiguous.

"The cardinal rule of [contract] construction is to ascertain the intention of the parties." OCGA § 13-2-3. "The language which the parties have used will be looked

10

to for the purpose of finding that intention, which when it is once ascertained will prevail over all other considerations, in determining the nature of the agreement." *Akron Pest Control v. Radar Exterminating Co.*, 216 Ga. App. 495, 497 (1) (455 SE2d 601) (1995) (citation and punctuation omitted). "Moreover, no construction is required or even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation." *Freund v. Warren*, 320 Ga. App. 765, 768-769 (1) (740 SE2d 727) (2013) (citation and punctuation omitted). "If the terms used are clear and unambiguous they are to be taken and understood in their plain, ordinary, and popular sense." *Akron Pest Control*, 216 Ga. App. at 497 (1) (citation and punctuation omitted).

According to Prakash, the trial court "found that [Prakash] agreed to personally pay to [Shama] the debt owed by his sister Pallavi." Prakash argues that the statement that he would "authorize" the payment now in dispute "clearly meant that the funds were to come from his father's account" and that there was no agreement for him to be personally obligated to pay Pallavi's debt.

Despite Prakash's argument, the trial court did not make any finding as to whether Prakash agreed to "personally" pay Shama, nor did it find that Prakash's agreement to authorize the transfer of £24,850 was a payment for any debt allegedly

11

owed by Pallavi. By granting summary judgment to Shama on the breach-of-contract claim, the trial court essentially concluded that there were no disputed issues of material fact as to whether Prakash had an obligation to authorize the transfer of funds to Shama's bank account. Although the November 2014 letter refers to various bank documents to be signed by Shama, it does not specify the source of the funds to be transferred to Shama's account. It does, however, unambiguously state that after Prakash received notification that the transfer document had been recorded, he was to "authorize the transfer of £24,850" to Shama's bank account. The parties do not dispute that Prakash received notification that the transfer document had been recorded. Thus, the trial court did not err in concluding that the alleged agreement unambiguously required Prakash to authorize the payment of £24,850 to Shama's bank account.

3. Prakash asserts that the trial court made improper findings of fact, failed to account for his evidence, and incorrectly interpreted other materials in the record. We discern no reversible error.

(a) Prakash contends that the trial court erroneously decided that he never authorized payment of the funds at issue. According to Prakash, whether he authorized the payment of the funds is in dispute because he testified that he

"authorized" his father to transfer the funds, but Indubhai refused and also did not want Prakash to make the transfer.

As discussed in Division 2, the November 2014 letter unambiguously states that after Prakash received notification that the transfer document had been recorded, he was to "authorize the transfer of £24,850" to Shama's bank account. By granting summary judgment to Shama on the breach-of-contract claim, the trial court in essence concluded that there were no disputed issues of material fact as to whether Prakash failed to satisfy his obligation to authorize the transfer of £24,850 to Shama's bank account, regardless of the source of the funds. Prakash's argument that there is a dispute as to whether he authorized the payment of the funds at issue is based on his contention that the funds were to come from Indubhai's account. However, as discussed in Division 2, the November 2014 letter does not specify the source of the funds to be transferred. Under the circumstances of this case, the trial court did not err by determining that there is no material dispute that Prakash did not authorize the payment of the £24,850.

(b) Prakash argues that the trial court improperly construed any ambiguity in the November 2014 letter against him based on the erroneous finding that he or his lawyer drafted it. However, the trial court found that the November 2014 letter was

13

unambiguous and thus did not construe any ambiguity against Prakash. Consequently, this argument has no merit.

(c) According to Prakash, the November 2014 letter obligated Shama "to remove herself as a signatory to the joint bank accounts she maintained with [Indubhai,]" and she did not satisfy this obligation. The trial court determined this contention was meritless because (a) although the November 2014 letter purports to have certain banking documents attached for Shama to sign, no documents were attached and Prakash never provided the documents; and (b) any language in the November 2014 letter concerning Shama's removal from a joint bank account is not a condition of Prakash's promise to authorize the transfer of £24,850 to Shama. Prakash contends that the trial court erroneously found that no banking documents were attached to the November 2014 letter and that he never provided the referenced documents. As discussed previously, the November 2014 letter provides that Prakash was to authorize the transfer of £24,850 to Shama's account once he received notification that the house transfer had been recorded. Thus, contrary to Prakash's argument, Shama was not required to "remove herself as a signatory to the joint bank accounts" in order for Prakash to be obligated to authorize the transfer of £24,850 to Shama's account. Therefore, even if the trial court erred in determining that the

14

banking documents were not attached to the November 2014 letter and that Prakash never provided the documents, Prakash has shown no reversible error, because those documents formed no part of the parties' bargain.

4. Prakash argues that Shama's claims are barred by the Statute of Frauds. We disagree.

As relevant here, under the Statute of Frauds, to be "binding on the promisor," a "promise to answer for the debt . . . of another" must "be in writing and signed by the party to be charged therewith[.]" OCGA § 13-5-30 (a) (2). Prakash contends that Shama is seeking to require him to pay for a debt allegedly owed by Pallavi or Indubhai. On appeal, Shama denies that this is the case, even though she testified to the contrary at her deposition. Pretermitting whether the alleged agreement is a "promise to answer for the debt . . . of another[,]" the Statute of Frauds does not extend to cases "[w]here there has been performance on one side, accepted by the other in accordance with the contract[.]" OCGA § 13-5-31 (2). In other words, "the Statute of Frauds does not bar enforcement of a contract which has been fully performed on one side." *Bishop v. Westminster Schools*, 196 Ga. App. 891, 893 (3) (397 SE2d 143) (1990). Here, Shama fully performed her obligation by signing the

transfer document. Consequently, the Statute of Frauds does not bar enforcement of the alleged

agreement, and Prakash is not entitled to summary judgment on this basis. See id.

*Judgment affirmed in part and reversed in part. Doyle, P. J., and Reese, J., concur.*